**Thomas Dewey LAMBERT,
Petitioner-Appellant,**

**v.**

**WARDEN, U. S. PENITENTIARY, and
The United States Parole Commission,
Respondents-Appellees.**

**No. 78-2993
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 12, 1979.

Rehearing Denied April 12, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Thomas Dewey Lambert, pro se.

William L. Harper, U.S. Atty., William E. Turnipseed, Asst. U.S. Atty., Atlanta, Ga., for respondents-appellees.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

PER CURIAM:

Thomas D. Lambert was convicted of bank robbery in 1969 and sentenced to ten years imprisonment. He was mandatorily released in 1975, with roughly fourteen hundred days remaining to be served on his sentence. While on mandatory release, Lambert was convicted of violating the federal firearms laws, and was sentenced to thirty months imprisonment. A warrant for his arrest for violating the terms of his mandatory parole was sent to the warden of the federal penitentiary in Atlanta, where petitioner was incarcerated, with a request that it be lodged as a detainer. Lambert was notified of his rights with

respect to the warrant and on September 8, 1976, he requested that the United States Parole Commission (hereinafter U.S.P.C.) execute the aforesaid warrant. On March 9, 1977 the warden was notified and directed to advise petitioner that the U.S.P.C. had reviewed the "detainer-warrant" and determined that it should remain in effect. The notice also indicated that the detainer-warrant would again be reviewed in February, 1978.

On April 11, 1977, the institution notified the U.S.P.C. that the warrant had been lodged as a detainer against Lambert. Lambert then sought to compel dispositional review. Judge Edenfield granted defendant's motion for summary judgment, however, noting that the 180-days allowed for the U.S.P.C. to review the detainer had not yet expired and did not commence until April 7, 1977. The Judge did instruct that the dispositional review required by 28 C.F.R. § 2.47 be held within the 180-day limit, *i. e.*, by October 4, 1977. On October 20, 1977, Lambert was notified of the U.S.P. C.'s pending dispositional review. On November 4, 1977, Lambert requested an appointed attorney.

This habeas action (entitled motion to dismiss detainer warrant for non-compliance) was filed by Lambert on December 8, 1977. Respondents were ordered to show cause within thirty days why the relief should not be granted. Undeterred, on December 12, 1977, the U.S.P.C. wrote the district court requesting appointment of counsel for petitioner as per his earlier request. Through some mix-up on the part of either the district court or the U.S.P.C., the U.S.P.C. was under the impression that counsel was not to be appointed. In reality, counsel had been appointed on December 20, 1977. Notice of that fact did not reach the U.S.P.C. until December 22, 1977. Meanwhile, on December 21, 1977, in the absence of counsel for petitioner, the U.S. P.C. held a dispositional review. Upon learning that the district court had in fact appointed counsel, the U.S.P.C. scheduled another dispositional review for February 13–23, 1978.

On January 13, 1978, petitioner Lambert became eligible for mandatory release on the thirty month sentence, and was released to the aforesaid "detainer-warrant." Six days later, petitioner filed a motion requesting that the government officials involved be adjudged in contempt for failing to comply with the court's orders to show cause. On February 9, 1978, the magistrate filed a report recommending that either a dispositional review be conducted within thirty days, or if petitioner had been released to the detainer, that a parole or mandatory release revocation hearing be held within ninety days. Before the district court had time to act on the report, the appellees reported that they had complied with the recommendation by having given petitioner a mandatory release revocation hearing on February 22, 1978. On March 14, 1978, petitioner was notified that mandatory release was revoked and that no credit for time spent on release would be awarded. Petitioner, represented by counsel at the mandatory release revocation hearing, never appealed the findings. Instead, he filed a supplemental motion which charged that the U.S.P.C. abused their discretion and did not give him meaningful parole consideration. Lambert alleged that he was not allowed to present material in mitigation of the parole violator warrant and further, that the reasons given by the U.S.P.C. for his denial of parole were legally insufficient. The district court held that Lambert's mandamus motion to expunge the detainer had become moot, denied Lambert's contempt request, and ordered the government to respond to petitioner's supplemental motion attacking the revocation proceeding within ten days. After receiving an enlargement of time pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, the U.S.P.C. responded to the attack on its revocation procedures noting that petitioner had allowed the thirty-day appeal period to lapse and had thus failed to exhaust his administrative remedies. 28 C.F.R. §§ 2.25, 2.26, 1978. The district court agreed and dismissed without prejudice. Lambert's subsequent motion for arrest of judgment and for reconsideration of

the dismissal was denied. This appeal followed.

Lambert claims that failure of the U.S. P.C. to conduct a dispositional review of the detainer within 180 days, as required by Section 2 of Parole Commission and Reorganization Act, Pub.L. No. 94–233 § 2, 90 Stat. 228 (1976) (codified at 18 U.S.C. § 4214(b)(1) (1976)) (The Act), requires his release from custody. As the Seventh Circuit recently noted, this would indeed be "very strong medicine, for it means that . . . one who has been fairly determined to have violated his parole, must go entirely free." *United States ex rel. Sims v. Sielaff*, 563 F.2d 821, 828–29 (7th Cir. 1977). On the other hand, Congress has enacted time limits which govern dispositional reviews, revocation hearings, etc., and failure of the courts to enforce these time limits would make a mockery of this clear legislative charge.

Within this framework, this Court considered an untimely parole revocation hearing in *Smith v. United States*, 577 F.2d 1025 (5th Cir. 1978). In *Smith*, petitioner claimed that failure of the U.S.P.C. to conduct a final parole revocation hearing within 90 days of his "retaking" (as required by 18 U.S.C. § 4214(c) (1976)) required his release from custody. The hearing was held some 110 days from the date of Smith's retaking. At no time during the ninety day period did Smith request his hearing. The Court explicitly rejected establishment of a per se rule in this area, and instead continued the pre-1976 Parole Commission and Reorganization Act rule of prejudice which requires that in the absence of an allegation of bad faith on the part of the U.S.P.C., a petitioner must show that the delay in the final revocation caused him some prejudice. The Court based its holding on four points. First, where Congress had intended "draconian" remedies, it has specifically authorized such action. Second, this Court observed that the legislative history of the Act indicates that the remedy available to the prisoner or parolee is to compel the decision, not release from custody. Third, under the

pre-Act law, a two-step analysis was employed which required a showing that: 1) the delay was "unreasonable," and 2) the defendant suffered some prejudice. The statute, the Court noted, establishes only that delays of more than 90 days are unreasonable. Defendant must still show prejudice. Finally, the *Smith* Court reasoned that the statute did not provide a right without a remedy in that it made the formerly indefinite determination of "reasonable time" definite and thus enabled a parolee "to go into court and force the Parole Commission to hold a revocation hearing within 90 days." 577 F.2d at 1029.

While the reasoning in *Smith* is fairly compelling with respect to the case at bar, we must note one key distinction. In this case, Lambert vigorously attempted to obtain a dispositional review within the 180-day statutorily proscribed time period. Thus, factor number four in *Smith* is, as applied in this case, merely an illusory benefit. He could not go into court and force the Parole Commission to hold a dispositional review. The district court, instead of noting that the U.S.P.C. had until the end of the 180-day period to hold the review, *might* have ordered compliance with the Statute, thereby opening the door to contempt charges if the U.S.P.C. continued to flaunt the law. We are not prepared to hold that all persons facing dispositional review come to the court for a *pro forma* order compelling the review within the statutory period. These are matters best left to the discretion of the district court. But those who come to the courts seeking compliance with the timetable established by Congress should not be left remediless. Accordingly, those persons who approach the court seeking dispositional review towards the end of the statutory period should come armed with the full enforcement powers of the judiciary. Thus, if at the expiration of the statutory period a proper hearing has not been held, a mandamus action to compel compliance would be appropriate, coupled with appropriate sanctions against the non-

complying officials.[1]  In accordance with the foregoing, Lambert's release request is denied.[2]

■ Lambert's next argument concerns forfeiture of good time credits and credit for time spent on conditional release by those who have had their mandatory release revoked.  Under 18 U.S.C. § 4164 (1976), a prisoner given mandatory release would "be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced" less 180 days.  Under the pre-1976 law, it is clear that a parole violator could lose both good time credits and credit for time spent on conditional release.  18 U.S.C. §§ 4205, 4207 (1970); *Coronado v. United States*, 540 F.2d 216, 218 (5th Cir. 1976); *Blanchard v. United States*, 433 F.2d 13 (5th Cir. 1970).  Under the Parole Commission and Reorganization Act, sections 4205 and 4207 were substantially changed and include no similar forfeiture provisions.  Nonetheless, absent some legislative indication to the contrary, we will not upset the well-settled rule that once the appellant's release was revoked because of his violation of its conditions the U.S.P.C. had the authority to forfeit the appellant's good-time credit as well as credit for time spent on conditional release.  *Lazard v. United States*, 583 F.2d 176, 177 (5th Cir. 1978); *Coronado v. United States*, 540 F.2d 216, 218 (5th Cir. 1976); *Henning v. United States Bureau of Prisons*, 472 F.2d 1221, 1222 (5th Cir. 1973); *Smith v. Blackwell*, 367 F.2d 539, 541 (5th Cir. 1966).

■ Lambert's third claim questions the propriety of holding a joint dispositional review—parole revocation hearing.  He argues that he and his counsel were unfairly surprised by a parole revocation hearing, or revocation-disposition hearing when they were expecting only a dispositional review.  This argument is meritless for several reasons.  First, the detainer was executed on January 13, 1978.  At that time, the only appropriate administrative proceeding would be a parole revocation hearing.  18 U.S.C. § 4214(c) (1976).  A dispositional review would not have been appropriate since he was not then "serving a new sentence." 18 U.S.C. § 4214(b)(1) (1976).  Second, a dispositional review and a revocation hearing would consider similar issues.  Both would be concerned with petitioner's conduct, particularly while on release.  *See Moody v. Daggett*, 429 U.S. 78, 88, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976) ("The statutory hearing to which petitioner will be entitled upon his application for release on parole will give him the same full opportunity to persuade the Commission that he should be released from federal custody as would an immediate hearing on the parole violator warrant.")

■ Lambert finally urges this Court to review the district court's dismissal of his motion to review the revocation proceedings.  The district court dismissed the motion without prejudice, noting that petitioner had failed to appeal the mandatory release revocation as permitted by 28 C.F.R. § 2.25, 2.26 (1978).  The court was correct in dismissing petitioner's motion for failure to exhaust his administrative remedies.  *Burnett v. United States Board of Parole*, 491 F.2d 966 (5th Cir. 1974).

In accordance with the foregoing, the dismissals are affirmed.

AFFIRMED.

---

1. Nothing herein is meant to alter the avenues down which a prejudiced prisoner might proceed.

2. Although contempt is a harsh remedy, its use is sometimes mandated by the circumstances.

While Judge Edenfield correctly considered this alternative, his determination that there had been no direct violation of his order precluded its use.