430 So.2d 408 (1983)
Clista U. SEGARRA
v.
STATE of Mississippi.
No. 54116.
Supreme Court of Mississippi.
April 13, 1983.
Clista U. Segarra, pro se.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Clista U. Segarra brings this appeal from the Circuit Court's denial of habeas corpus relief. She argues that time spent out of prison while on parole should count as time served toward completion of her original sentence. This should be so, she says, even though her parole was lawfully revoked before completion of its term and she was recommitted to the Mississippi State Penitentiary (MSP).
The Circuit Court held that the time Segarra spent on parole should not be considered to diminish the time she must serve on her original sentence. Rather, release on parole tolled her sentenced service of which she resumed upon revocation. The Circuit Court accordingly denied relief. We affirm.

*409 II.
On September 19, 1978, Clista U. Segarra was convicted in the Circuit Court of Lincoln County, Mississippi of the crime of burglary of a dwelling. Miss. Code Ann. (1972) § 97-17-19. On the same date she was sentenced to serve a term of three years in MSP and within the custody of the Mississippi Department of Corrections (MDC).
On August 30, 1979, Segarra was released on parole. While on parole Segarra was subject to the control and supervision of the Mississippi State Parole Board. Just over 14 months later, on November 7, 1980, Segarra was arrested in Pike County on an unrelated criminal charge of burglary of an automobile. Miss. Code Ann. (1972) § 97-17-33. Her parole was in due course revoked and she was returned to MSP.[1] She was advised that she was required by law to commence service of the almost 26 months remaining on her original three year sentence.
On May 18, 1982, Segarra brought the instant habeas corpus proceedings in the Circuit Court of Sunflower County, Mississippi. In her petition, Segarra charged that she should be given credit for the period from August 30, 1979, until November 7, 1980, on her first three year burglary sentence. Under her interpretation, that sentence expired on September 19, 1981, and all time served after that date must be credited toward her second three year sentence.
Upon consideration of the matter, the Circuit Court held that Segarra was entitled to no relief. The Court stated
"The law provides that time spent on parole, if revoked, shall not be taken into account to diminish the time for which the offender was originally sentenced, Section 47-7-27, Mississippi Code of 1972, as amended. Consequently, Petitioner may not be given credit for time on parole against time otherwise unserved on her sentence."
Segarra's habeas corpus petition, accordingly, was dismissed. This appeal has followed.

III.
The Courts of this state are available to one incarcerated at the Mississippi State Penitentiary raising questions such as that presented here regarding the term or duration of his or her confinement. See, e.g., Watts v. Lucas, 394 So.2d 903 (Miss. 1981); Hill v. State, 388 So.2d 143, 146 (Miss. 1980); Davis v. State, 429 So.2d 262 (Miss. 1983). Rule 8.07 of the Uniform Criminal Rules of Circuit Court Practice provides a procedure which may be invoked by prisoners seeking such relief. Segarra has employed a procedural device available to her. Having been denied relief in the Circuit Court, she has timely and properly perfected her appeal to this Court.

IV.

A.

(1)
Segarra argues that her release on parole on August 30, 1979, marked a change only in the form of her custody. She continued to be restrained of her liberty. True, Segarra was removed from the walls of confinement at the MSP. She points, however, to the conditions of her parole and correctly observes that she lived under not inconsiderable restrictions after August 30, 1979. These restrictions[2], she argues, had the legal effect of keeping the clock ticking on her three year sentence.
*410 The mere passage of days with one's liberty in fact restricted does not necessarily count as time served on one's sentence. What is and what is not a criminal's expiating punishment is a creation of law. Which days count, and which days do not is likewise determined by law. The fact of restriction, no matter how real, counts for nothing unless the law says otherwise.[3]
The law in this instance unequivocally provides that, in cases such as this,
"... the offender shall serve the remainder of the sentence originally imposed, and the time the offender was out on parole shall not be taken into account to diminish the time for which he was sentenced." Miss.Code (1972) § 47-7-27.
No doubt persons on parole have been deemed in custody for other purposes. See, e.g., Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1962) (persons on parole are "in custody" and may file petition for writ of habeas corpus). Had she while on parole presented a bona fide complaint regarding her sentence on parole restrictions, Segarra would under controlling principles have had standing to proceed. *411 Yet "custody" for purposes of running the clock on one's sentence and "custody" for purposes of the standing doctrine are entirely different matters. That "custody" may be defined and have a legal effect different in one context than is true in another is nothing more than a reflection that one context has no functional or juridical connection with the other.

(2)
A more troublesome point is the suggestion that credit is allowed for time spent on work release and that work release and parole are functionally and juridically similar. Here we note our recent decision in Ivory v. State, 403 So.2d 1284 (Miss. 1981).
Ivory concerned a claim of credit for time spent by one released under the Supervised Earned Release Program (SER). Ivory had been released under the SER Program but was returned to the MSP for violation of a SER Rule. This Court held that he should not automatically be denied credit on his sentence for the time spent on SER.
In distinguishing the SER case from parole, the Ivory Court wrote
"Although release under parole and the SER Program place many identical and very similar restrictions upon the convict, there are differences... ."
"Mississippi Code Annotated § 47-7-27 (Supp. 1980) clearly provides that a parolee, whose parole has been revoked, is not entitled to credit on his sentence for the time he was out on parole. [Quoting statute] The SER Program contains no such penalty for a person who is apprehended or whose release is terminated for violation of the terms of his release." 403 So.2d at 1286.
The "differences" found, to be sure, are differences in law, not in fact. They may even seem arbitrary or irrational. They are nonetheless within the legislature's power to enact and our duty to enforce.

(3)
How other states handle this matter may serve only to reflect the lack of novelty in Mississippi's approach. That Segarra may not think that she would have received more lenient treatment had her encounters with the criminal law been in another state, we call her attention to Hall v. Bostic, 529 F.2d 990 (4th Cir.1975), cert. den. 425 U.S. 954, 96 S.Ct. 1733, 48 L.Ed.2d 199 (1976). In Hall the United States Court of Appeals for the Fourth Circuit observed
"There is nothing unusual in the denial by North Carolina law of credit for probation or parole time against a prison sentence. It is common to both state and federal probation and parole systems.[4] The validity of such denial has been universally recognized both in federal and state decisions... .
* * * * * *
[4] For cases dealing with parole: Zerbst v. Kidwell (1938) 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399; Anderson v. Corall (1923) 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247; Hamrick v. Peyton (4th Cir. 1965) 349 F.2d 370, 372; Hutchison v. United States (10th Cir.1971) 450 F.2d 930, 931; United States v. Farrell (8th Cir.1937) 87 F.2d 957, 961; State v. Davis (1973) 19 N.C. App. 459, 199 S.E.2d 37, 38."
529 F.2d at 991.
The United States Court of Appeals for the Fifth Circuit has spoken to the point in the context of a case arising under the Federal Parole Commission and Reorganization Act. See Lambert v. Warden, United States Penitentiary, 591 F.2d 4 (5th Cir.1979). In Lambert the Court described as "well settled" the
"[r]ule that once the appellant's release [parole] was revoked ... the U.S.P.C. [United States Parole Commission] had the authority to forfeit appellant's... credit for time spent on conditional release." 591 F.2d at 8.
Were there constitutional or other legal infirmity in such a rule, we are confident the Fifth Circuit would have noted it.
We are not unaware that the corrections community is less than unanimous in its support of the rule we approve here. Strong criticism has been directed toward prohibitions of credit for "street time" where the parole is later revoked.[4] A few *412 states have enacted statutes which expressly require credit for parole time upon revocation.[5] Such an approach has been recommended by the American Law Institute, Model Penal Code § 305.17(1); National Council on Crime and Delinquency, Standard Probation and Parole Act § 27 (1955); National Advisory Commission on Criminal Justice Standards and Goals, Report on Corrections § 16.15(3) (1973). Were the legislature of this state to amend section 47-7-27 to adopt Segarra's approach, we would cheerfully enforce it. For the present, however, a thoughtful consideration of these points merely undergirds the fundamental premises of our decision today, that Segarra's arguments would be more properly addressed to the Mississippi Legislature, not this Court.

B.
Segarra next argues that, by denying her credit against her sentence for the almost fifteen months she spent on parole, the State has deprived her of rights secured under the double jeopardy clause in the Fifth Amendment to the Constitution of the United States, made applicable to the states via the Fourteenth Amendment.
On September 19, 1978, Segarra received her original sentence of three years. Effective April 7, 1981 the state in effect changed  and enhanced  her sentence to three years of imprisonment plus over 14 months of supervised parole. Segarra argues that she has thus been sentenced twice for the same crime. She invokes the United States Supreme Court's authoritative construction of the double jeopardy clause in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Pearce holds that the clause "protects against multiple punishments for the same offense". 395 U.S. at 717, 89 S.Ct. at 2076.
Had the Circuit Court, upon revocation of Segarra's parole, imposed for her original burglary offense a new, longer sentence, we would lend her aid. Cf. Leonard v. State, 271 So.2d 445 (Miss. 1973). It did not do this. Segarra was merely recommitted to MSP custody  to pick up where she left off. The Circuit Court added no terms or conditions to Segarra's sentence other than those to which she was wholly subject, in fact or potentially, back on September 19, 1978.
The statutory sentencing/parole scheme of which Segarra complains was in place long before she committed her first burglary in 1978. It consisted of the maximum ten year sentence authorization of the general burglary statute. Miss. Code Ann. (1972) § 97-17-19. It consisted of the general parole statutes, particularly including those empowering the State Parole Board to prescribe rules and regulations for the governance of persons on parole. Miss. Code Ann. (1972) § 47-7-23. And, it necessarily incorporated all regulations lawfully promulgated thereunder. The parole statutes and regulations, of course, remained inchoate insofar as Segarra was concerned until August of 1979 when she applied for and secured release thereunder. Yet they were as much a part of Segarra's sentence imposed September 19, 1978 as if expressly included therein. Though inoperative until she first accepted and then violated parole, these constituted a single complex sentence for her offense of burglary.
As explained above, Segarra's confinement calendar was tolled during her parole. This is the scheme the legislature has enacted. No one made her apply for or accept the conditions of parole. She could have remained at the penitentiary and "flat timed" her three year sentence. This would have procured for her the double benefit of discharge no later than September 19, 1981, and incapacitation from burglarizing an automobile on November 7, 1980. That she *413 was returned to MSP to resume service of her sentence on November 7, 1980, to pick up where she left off her previous service, is not a matter of which she may complain.
We are not alone in our conclusion that there is no constitutional defect in this state's statutory scheme which denies to a parole violator credit on his reinstated sentence for time spent on parole.[6] See Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed.2d 247, 254 (1923); Hamrick v. Peyton, 349 F.2d 370, 372 (4th Cir.1965); Sturgis v. United States, 419 F.2d 390 (5th Cir.1969).
We hold that Segarra has been given a single sentence for her crime of burglary. That the complex and not immediately operative terms, those respecting parole, were incorporated therein, in no way militates against the unitary nature of the sentence. That single sentence in effect was
"Clista U. Segarra you are hereby committed to the custody of MDC for a period of three years; provided, however, that if at any time prior to the expiration of said three year period you apply for and obtain release on parole the service of your sentence will be tolled during the time you are out on parole; provided further, that if you obtain release on parole and if prior to the end of the said three year period you have not violated the conditions of your parole, you shall thereupon stand finally discharged.
Segarra has not been subjected to multiple punishments for her 1978 burglary offense. No rights secured to her by the double jeopardy clauses of the federal or state constitutions have been abridged.

VI.
Segarra finally argues that subjecting her to the resumed sentence without credit for the 14 odd months she spent on parole, the authority for which as explained above is Section 47-7-27, amounts to enforcement against her of an ex post facto law and further denies to her due process of law. The operative portion of Section 47-7-27 has been on this state's statute books since 1944. It is neither vague nor ambiguous. The construction we here place on the law is one clearly foreseeable from the moment of its enactment. Indeed, the construction we place on the law is the only reasonable one. Accordingly, our enforcement of Section 47-7-27 in the manner we read it here in no way constitutes an ex post facto construction. Nor can we perceive any way in which Segarra has been denied due process of law.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] If we understand the facts correctly, Segarra was taken into custody on the charge of burglary of an automobile on November 7, 1980. She has been in custody continuously since that time. She was not convicted and sentenced on this charge until March 23, 1981. For this second burglary, the Circuit Court of Pike County imposed another three year sentence to be served consecutively and not concurrently with the completion of the first. Thereafter, on April 7, 1981, Segarra's probation was formally revoked. Segarra makes no complaint here regarding the substantive or procedural validity of her parole revocation.
[2] Segarra, as a condition of her parole, was required to execute the following agreement setting forth the restrictions to which she remained subject while on parole.

STATEMENT OF CONDITIONS UNDER WHICH THIS PAROLE IS GRANTED
This Certificate of Parole shall not become operative until the following conditions are agreed to by the prisoner
1. I will report immediately to my Field Supervisor, who will report to the State Parole Board, Jackson, Mississippi, the fact that I have reported on the Arrival Notice provided for that purpose. I will report to my Sponsor-Employer at once.
2. I will remain within the limits fixed in the Certificate of Parole. If I have good cause to leave these limits I will obtain written permission from my Field Supervisor before doing so.
3. I will report in person to my Field Supervisor as directed by him or the State Parole Board, Jackson, Mississippi. And do hereby further agree to pay the Department of Corrections, a supervision fee of $10.00 per month as required by House Bill No. 76 as passed by the 1979 regular session of Mississippi Legislature.
4. I will not have in my possession nor use alcoholic or intoxicating beverages or narcotics of any kind and will not go into, remain about, or frequent places where they are dispensed, or sold or used unlawfully.
5. I will live and remain at liberty without violating the law.
6. I will not own nor carry with me any weapon and will not visit gambling places or associate with persons of bad reputation.
7. I will secure the permission of my Field Supervisor before entering marriage.
8. I will in all respects conduct myself honorably, work diligently at a lawful occupation, and support my dependents, if any, to the best of my ability.
9. I will promptly and truthfully answer all inquiries directed to me by the State Parole Board, or by my Field Supervisor.
10. If at any time it becomes necessary to communicate with my Field Supervisor for any purpose and he is not accessible, I will direct my communication to the State Parole Board, Jackson, Mississippi.
11. I agree to live and work at the places stated in my parole plan and I will not change without permission to do so from my Field Supervisor.
12. I will not return to the Mississippi Department of Corrections on a visit without the joint approval of the State Parole Board and the Warden of the Mississippi Department of Corrections.
13. I agree not to own a motor vehicle without first obtaining the consent of my Field Supervisor.
14. I understand that I am to remain on parole until released.
15. I do hereby waive extradition to the State of Mississippi from any state of the United States and also agree that I will not contest any effort by any state to return me to the State of Mississippi.
16. The board realizes that, under the American system, compulsory church attendance may be regarded as infringement upon the idea of separation of church and state and therefore does not include this as a specific condition of parole. However, the Board wishes the parolee to know that in its opinion no more important element enters into the proper rehabilitation of the individual than does religion. The Board strongly recommends to the parolee that he or she, do, immediately upon release on parole, communicate with a minister, priest or rabbi of the parolee's own choosing and secure the assistance of such person in helping work out the parolee's problems. The Board suggests to the parolee regular church attendance and active membership by the parolee in a church of the parolee's choosing.
[3] Release on bail is another circumstance where one may most definitely be subject to restrictions imposed by law but where we doubt anyone would suggest that time spent should be credited against one's sentence.
[4] Singer and Hand, Sentencing Computation: Laws and Practices, 10 Crim.L.Bull. 318 (1974);

Note: Parole Revocation in the Federal System, 56 Geo.L.J. 705 (1958); Note, "A la Recherche du Temps Perdu": The Constitutionality of Denial of Credit on Revocation of Parole, 35 U.Chi.L.Rev. 762 (1968).
[5] See, e.g., Ala. Code tit. 42, § 12; Ill. Ann. Stat. ch. 38, § 1003-3-9(a)(3)(i) (Smith-Hurdy); Mich. Stat. Ann. § 28.2308 [M.C.L.A. § 791.238]. N.H. Rev. Stat. Ann. § 651:3; Tenn. Code Ann. § 40-3619.
[6] We are familiar with the thoughtful opinion of the Supreme Court of Appeals of West Virginia in Conner v. Griffith, 238 S.E.2d 529 (W. Va. 1977). Conner accepts the theory tendered by Segarra here, but it does so on the authority of the double jeopardy clause of the Constitution of the State of West Virginia, not the Fifth Amendment to the United States Constitution. Suffice it to say that Conner does not persuade us that a similar construction should be placed on our double jeopardy clause. Miss. Const. (1890), Art. 3, § 22.