**Darrell HILL, Petitioner,**

v.

**Dutch BREWER, Warden, Federal Correctional Institution, Oxford, Wisconsin, Respondent.**

No. 84–C–565–C.

United States District Court, W.D. Wisconsin.

April 12, 1985.

proper time for that would be in the second phase of the trial.

See also 808 F.2d 19.

Darrell Hill, pro se.

John Byrnes, U.S. Atty., Madison, Wis., for respondent.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus. Petitioner is an inmate at the Federal Correctional Institution at Oxford, Wisconsin. He claims that his confinement is being prolonged in violation of the Constitution and the laws of the United States. 28 U.S.C. § 2241. Petitioner argues that he is entitled to immediate release because of the good time credits he has accumulated that have never been properly taken from him.

From the documentary record produced by the parties, I find the following facts.

## FACTS

Petitioner was convicted of bank robbery in the Eastern District of Michigan and was sentenced to a term of twelve years imprisonment. He began serving the sentence on November 5, 1975, and was credited with 119 days of presentence confinement. As petitioner served the sentence, he was credited with both statutory and extra good time, pursuant to 18 U.S.C. §§ 4161, 4162 (1982). Prior to the time that petitioner's accumulated good time credits mandated release "as if" on parole under 18 U.S.C. §§ 4163, 4164 (1982), he was paroled by the United States Parole Commission on November 10, 1981. Upon his release, petitioner had 2,067 days remaining on his sentence, and he had earned 761 days of statutory good time credit and 214 days of extra good time credit.

On January 19, 1982, two months after petitioner's release on parole, the parole commission issued a warrant for petitioner's arrest for a violation of the conditions of his parole. The warrant was executed on April 28, 1983. The warrant application informed petitioner of the charges against him, and stated that the commission could, after a revocation hearing, "revoke your parole or mandatory release, in which case the Commission will also decide when to

consider you for further release." (Petitioner does not allege that he did not receive a copy of this warrant. For the purposes of this opinion, I assume that he received it.)

Subsequently, petitioner attended a hearing before parole commission examiners. In a Notice of Action dated August 16, 1983, the commission ordered that petitioner's parole be revoked, and that none of the time spent on parole be credited toward service of his sentence. The commission deferred recommending a release date. After another hearing, the commission ordered that petitioner "[c]ontinue to expiration," in a Notice of Action dated October 7, 1983.

Petitioner presently is serving his violator term of 2,067 days. The Bureau of Prisons has computed a mandatory release date of February 14, 1987, which does not take into account the 975 days of good time credit that petitioner earned on the original term.

OPINION

Petitioner contends that the good time credit he earned on his original term has never been forfeited and therefore, the Bureau of Prisons should take it into account in computing his present sentence. Alternatively, he argues that as he has never attended a forfeiture hearing or been given notice of a forfeiture, any forfeiture of his good time credits was in violation of the due process clause of the Fifth Amendment.

Respondent contends that petitioner lost his good time credits upon leaving the institution on mandatory release. In effect, those credits were "used up" when he was released and since petitioner had no good time credits after parole release, there was nothing to be forfeited.

Respondent's view of what happens to good time credit upon parole release is a novel one that finds no support in the law, in legislative history, or in the practices of the United States Parole Commission on the Bureau of Prisons. The good time credit statutes, 18 U.S.C. §§ 4161–4166

(1982), do not provide, either explicitly or implicitly, that good time credit is solely for the purpose of calculating mandatory release dates. Rather, they state that good time credit is "a deduction from the term of his sentence." 18 U.S.C. § 4161 (1982). In the same way, the parole statutes, 18 U.S.C. §§ 4201–4218 (1982), do not provide, either explicitly or implicitly, that the consequence of release on parole is the automatic forfeiture of good time credit. The words "good time" or their equivalent do not even appear in the parole statutes.

Moreover, there does not appear to be any authority that supports respondent's interpretation of the statutes. I have found no regulation that would enact his interpretation and no support for the interpretation in the Bureau of Prison's Program Statements, or in the parole commission's Rules & Procedures Manual. Moreover, although respondent made this argument as long ago as 1973, see *Swift v. Ciccone*, 472 F.2d 577, 578 n. 1 (8th Cir. 1973), I can find no reported case adopting it. It is significant that respondent has cited no authority that supports his position.

The view of good time credit as being "used up" by release on parole is in conflict with the statutory and legislative history of good time credit and parole in the federal system. Originally, there was no parole, and good time credit reduced the length of the sentence. See 18 U.S.C. § 713 (1940) (enacted at Act of Mar. 3, 1875, ch. 145, § 1, 18 Stat. 479, and Act of Mar. 3, 1891, ch. 529, § 8, 26 Stat. 840). The statute awarding statutory good time credit during this period used the identical words used in the present statute, 18 U.S.C. § 4161 (1982): "Each prisoner ... shall be entitled to a deduction from the term of his sentence...." 18 U.S.C. § 710 (1940) (enacted at Act of June 21, 1902, ch. 1140, § 1, 32 Stat. 397).

Parole was not created until 1910. Act of June 25, 1910, ch. 387, 36 Stat. 819. Under the original legislation, the parolee was on parole only until the expiration of his sentence, less good time credit. 18

U.S.C. § 716 (1940). If his parole was revoked, good time credit was forfeited automatically by operation of statute: "the said prisoner shall serve the remainder of the sentence originally imposed." 18 U.S.C. § 719 (1940). The fact that it was necessary to include this forfeiture provision is an indication that good time credit was not viewed as being "used up" at the time of release on parole.

Respondent contends that an amendment in 1932 altered the previous statutory treatment of parole and good time. The 1932 amendment provided that the parolee would "continue on parole until the expiration of the maximum term or terms specified in his sentence without deduction of such allowance for good conduct as is or may hereafter be provided for by law." 18 U.S.C. § 716(a) (1940) (enacted at Act of June 29, 1932, ch. 310, § 3, 47 Stat. 381). *See also* 18 U.S.C. § 716(b) (1940) (same as § 716(a), although applied to person released conditionally). According to respondent, this amendment had the effect of forfeiting good time credit upon parole release.

I disagree. When Congress amended the parole statute it did not also delete the provision for forfeiture of good time credit upon parole revocation. 18 U.S.C. § 719 (1940). Nor did Congress delete the provision as part of amendments to the parole statutes in 1940 (Act of June 29, 1940, ch. 449, § 3, 54 Stat. 692). A more accurate view of the 1932 amendment is that after that time, good time credit no longer reduced the term of the sentence, but only the time to be spent in prison. This is the current concept of good time. *See, e.g., Hubbert v. United States Parole Commission*, 585 F.2d 857 (7th Cir.1978). I conclude that the 1932 amendment changed only what a prisoner obtained from his good time credits, and did not work to forfeit good time credits upon parole release.

In 1948 the parole and good time credit statutes were substantially revised. Act of June 25, 1948, ch. 645, 62 Stat. 853). Nothing about the changes indicates a different conception of good time credit or of the effect of parole release on good time credit. New 18 U.S.C. § 4207 (1970) provided that the revoked parolee could "be required to serve all or any part of the remainder of the term for which he was sentenced." Under the prior law, good time credit was automatically forfeited by the revocation of parole. 18 U.S.C. § 719 (1940). According to the revisor's notes to the 1948 legislation, 18 U.S.C. § 4207 (1970) was based on 18 U.S.C. § 719 (1940), but "rewritten to clarify and ratify existing administrative practice and construction." H.R.Rep. No. 304, 80th Cong., 1st Sess. (1947). In sum, the 1948 revision of the parole and good time credit statutes had no effect on the disposition of good time credit upon parole release.

The present parole statutes were enacted in 1976, replacing those of 1948. (The present good time credit statutes are the 1948 statutes, with minor changes.) Again, there is no evidence that release on parole was to have the effect of automatically forfeiting good time credit.

■ I conclude that since the creation of parole in 1910, without change, the parolee retains his good time credits while on parole. Respondent's position that good time credits are "used up" by parole release is without support in the statutory and legislative history of the parole and good time credit statutes.

Even if there were support for respondent's position in the statutory and legislative history, it is telling that the government usually takes the position that good time credits can be forfeited on the basis of parole revocation. *See, e.g.,* the following cases from the Seventh Circuit: *United States ex rel. Del Genio v. United States Bureau of Prisons*, 644 F.2d 585 (7th Cir. 1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 870, 66 L.Ed.2d 808 (1981); *Wilkerson v. United States Board of Parole*, 606 F.2d 750 (7th Cir.1979); *Leyvas v. Harris*, 428 F.2d 366 (7th Cir.1970); *Dolan v. Swope*, 138 F.2d 301 (7th Cir.1943).

The incompatibility of the government's prior position with its present position is

not attributable to the independence of United States Attorneys. The government's brief in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), signed by the Solicitor General and the Assistant Attorney General for the Criminal Division of the Department of Justice, argued that good time credit could be forfeited without a hearing if parole was revoked for commission of a criminal offense. Respondent's Brief at 30 n. 13, *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). That argument conflicts with respondent's present position that a parolee has no good time credits to be forfeited.

I have other concerns about the government's adoption in this case of an interpretation of good time as "used up" upon release. Many courts have stated that good time credit is forfeitable upon parole revocation (including the Supreme Court in dicta, *Moody v. Daggett,* 429 U.S. at 84, 97 S.Ct. at 277). If this is wrong, as the government now argues, the government should have issued "correcting" regulations. Yet, the Code of Federal Regulations is silent on the topic. In fact, the regulations can be construed against the government. The regulations provide specifically that extra good time credit from the initial term is not carried over to the violator term. 28 C.F.R. 523.17(c) (1984).[1] The absence of a matching regulation for statutory good time is strong implication that statutory good time *is* carried over to the violator term.

Finally, I note that the Parole Commission has ordered forfeiture in the past. *See, e.g., Wilkerson v. United States Board of Parole,* 606 F.2d at 750. This alone is a ground for holding that petitioner's good time credit was not "used up" upon his release on parole.

I conclude that petitioner had 975 days of good time credits when he was returned to the custody of the Bureau of Prisons and I turn next to the question whether this good time credit was ever forfeited.

From 1910, when parole was created, until 1948, Congress provided for automatic forfeiture of good time credits upon parole revocation: "If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed." 18 U.S.C. § 719 (1940). Since 1948, when the parole statutes were revised, the disposition of good time credit upon parole revocation has been less clear.

Early interpretations of the 1948 parole statutes, 18 U.S.C. § 4201–4210 (1970), tended to focus on one statutory passage in holding that good time credits were automatically forfeited by parole revocation. This passage was in 18 U.S.C. § 4205 (1970): "The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General...." *See, e.g., Hedrick v. Steele,* 187 F.2d 261, 263 (8th Cir.1951); *Smith v. Blackwell,* 367 F.2d 539, 541 (5th Cir.1966). However, some courts focused on a different statutory passage: "If such order of parole shall be revoked and the parole so terminated, the said prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced." 18 U.S.C. § 4207 (1970). Apparently, these courts believed that forfeiture of good time credits was discretionary with the parole board. *See, e.g., McKinney v. Taylor,* 358 F.2d 689, 690 (10th Cir.1966); *Lynch v. United States,* 414 F.2d 281, 282 (5th Cir. 1969). The Court of Appeals for the Seventh Circuit seems to have adopted this latter view. *See Leyvas v. Harris,* 428 F.2d at 367.

It is not necessary to decide whether it was 18 U.S.C. § 4205 (1970) or 18 U.S.C. § 4207 (1970) that authorized the forfeiture of good time credits. Perhaps the best view is that both sections did: 18 U.S.C. § 4205 (1970) automatically forfeited good

---

1. This regulation appears to be incompatible with 28 C.F.R. 523.17(q), which provides that once awarded, extra good time "becomes vested and may not be forfeited or withheld or retroactively terminated or disallowed."

time credits, but 18 U.S.C. § 4207 (1970) gave the parole board discretion to restore those credits. The end result was equivalent to a power in the parole board to forfeit good time credits at its discretion; the statutory scheme acted to forfeit credits when the board was silent on the subject.

This interpretation of 18 U.S.C. §§ 4205, 4207 (1970) is consistent with those cases in which courts have determined the effect of revocation on good time credits when the parole board is silent on the subject. An order to continue to expiration, without more, has been held to constitute a forfeiture of good time credits. *McKinney v. Taylor*, 358 F.2d 689. So too has an order revoking parole, absent any contrary indication. *Henning v. United States Bureau of Prisons*, 472 F.2d 1221 (5th Cir.1973). Although they are no longer operative, §§ 4201–4210 of Title 18 of the United States Code (1970), and the manner in which good time credits were forfeited following parole revocation under those statutes, are relevant to the present case.

In 1976 the parole statutes were rewritten, and the parole commission was created in place of the parole board. Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219 (1976). The new parole statutes, 18 U.S.C. §§ 4201–4218 (1982), are silent as to the consequences of parole revocation. Despite the lack of explicit authority for the Parole Commission to forfeit good time credits, it has been held that the commission retains the same authority as the board previously possessed, "absent some legislative intent to the contrary." *Wilkerson v. United States Board of Parole*, 606 F.2d at 751 (quoting *Lambert v. Warden*, 591 F.2d 4, 8 (5th Cir.1979)).

One court has held that good time credits forfeited as a result of parole revocation were not forfeited by the parole board, but by the Bureau of Prisons pursuant to 18 U.S.C. § 4165 (1982). *Swift v. Ciccone*, 351

F.Supp. 1149 (W.D.Mo.1972), *aff'd*, 472 F.2d 577 (8th Cir.1973). That court viewed the forfeiture as automatic, reasoning that a separate hearing for good time credit forfeiture purposes was unnecessary because there were no factual issues to resolve once the parole board had revoked parole on the basis of a parole violation. However, that holding is unpersuasive for three reasons.

First, the court assumed without discussion that 18 U.S.C. § 4165 (1982) applies not only to misconduct by prisoners while imprisoned, but to misconduct while on parole as well. I have some doubt that the statute is susceptible to that interpretation.[2] Second, there appears to be no written Bureau of Prisons policy that provides for the automatic forfeiture of statutory good time credit. Third, it was decided before *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that due process is required for the forfeiture of good time credit.

■ It is the parole commission, not the Bureau of Prisons, that was authorized to forfeit petitioner's good time credits. Although the parole commission did not make any order regarding petitioner's good time credits, it did order petitioner's parole revoked and petitioner continued to expiration. These orders were sufficient to forfeit petitioner's good time credits. *See McKinney v. Taylor*, 358 F.2d 689; *Henning v. United States Bureau of Prisons*, 472 F.2d 1221.

The final question is whether the forfeiture of petitioner's good time credits violated due process. Petitioner makes no specific allegation of impropriety, but asserts generally that if good time credits were forfeited, it was done without due process.

■ The due process clause of the Fifth Amendment applies to the forfeiture of good time credits by prison officials for disciplinary infractions. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d

2. 18 U.S.C. § 4165 provides:
   If during the term of imprisonment a prisoner commits any offense or violates the rules of the institution, all or any part of his earned good time may be forfeited.

935 (1974); *United States ex rel. Miller v. Twomey,* 479 F.2d 701 (7th Cir.1973). There is no principled reason for distinguishing between forfeiture of good time by the parole commission and forfeitures by prison officials. Nor is there any distinction between discretionary forfeiture by the commission, and automatic forfeiture by statute with commission discretion to restore good time credits. Therefore, I conclude that the decision to forfeit petitioner's good time credits by the parole commission was discretionary and subject to due process.

If petitioner's hearings were defective in any respect, it was in the failure of the parole commission to give him adequate notice of the possible consequences of parole revocation. Once the commission decides to revoke parole, pursuant to 18 U.S.C. § 4214(d)(5) (1982), it has two further decisions to make: whether the period the prisoner was on parole should be counted toward service of his sentence; and whether the prisoner's previously earned good time credits should be forfeited or restored. It appears from the record that the sole written notice to petitioner of the possible consequences of parole revocation was the parole commission's warrant application, which stated only that if parole is revoked "the Commission will also decide when to consider you for further release." This was not sufficient to constitute notice that parole revocation could result in the forfeiture of petitioner's good time credits.

In *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.E.2d 484 (1972), the Supreme Court set out the minimum procedural requirements for parole revocation consistent with due process. One of these is written notice of the claimed violations of parole. However, the Court did not make it a specific requirement that the prisoner be given notice of the possible consequences of revocation, and strict reading of *Morrissey* might argue for denial of the petition in the present case because petitioner had no due process right to notice of the possible consequences of revocation. On the other hand, it can be argued that implicit in the Court's opinion

was the understanding that the parolee would be aware of the possible consequences of the parole revocation hearing.

The Court of Appeals for the Ninth Circuit recently held that due process requires prior notice of the possible consequences of a charge. *Vanes v. United States Parole Commission,* 741 F.2d 1197, 1202 (9th Cir. 1984). In *Vanes* the parolee was not informed that parole revocation could result in the forfeiture of his time on parole ("street time"). The court held that whether forfeiture was automatic or discretionary, the lack of prior notice of possible consequences violated due process and the parolee's revoked street time credit must be restored.

■ In *Vanes,* the court did not discuss whether the prior notice must be written. I am of the opinion that the requirements of due process do not mandate written notice of the possible consequences of revocation because those possible consequences are limited and straightforward: forfeiture of good time and street time credits. Although written notice of alleged violations of parole is appropriate because of the possible factual complexity of the violations, little is to be gained by requiring written notice of possible consequences of parole revocation. If the parolee has verbal notice of the possible consequences, that is sufficient for due process.

■ Although there is no constitutional requirement of written notice, such notice is a statutory requirement. A warrant for retaking a parolee must provide a parolee with written notice of "the possible action which may be taken by the Commission." 18 U.S.C. § 4213(c)(3) (1982). *Accord* 28 C.F.R. § 2.44(e) (1984). It would appear that the parole commission acted in violation of this statute in not giving petitioner written notice of the possible consequences of parole revocation.

A statutory violation such as this one is not grounds for restoring petitioner's good time credits unless the petitioner can establish that the parole commission's failure to provide written notice of the possible con-

**22**

sequences of parole revocation caused him actual prejudice. *Short v. United States Parole Commission,* 549 F.Supp. 118, 120–21 (D.D.C.1982). If in the present case petitioner was given prior verbal notice of possible consequences, he would not have been prejudiced. However, I cannot make this final determination whether petitioner received verbal notice of the possible consequences of parole revocation, because the record is silent on that point.

### ORDER

IT IS ORDERED that respondent may have until April 29, 1985, in which to serve and file documentary evidence bearing on the question whether petitioner received verbal notice of the possible consequences of parole revocation. If respondent is unable to produce any evidence on this question, he shall so advise the court and petitioner and the writ of habeas corpus will thereupon issue, subject to respondent's providing petitioner with a forfeiture hearing comporting with the requirements of due process within ninety (90) days of the date of issuance of the writ.

If respondent produces evidence tending to show that petitioner was given verbal notice of the possible consequences of the revocation, petitioner shall have until May 20, 1985, in which to serve and file documentary evidence in opposition to respondent's submissions. If the question appears to be in dispute, an evidentiary hearing will be scheduled promptly upon receipt of petitioner's submissions.