**David J. CONLEY, Petitioner,**

v.

**R.D. BREWER, Respondent.**

No. 85–C–826–C.

United States District Court, W.D. Wisconsin.

July 29, 1986.

David J. Conley, pro se.

Jeffrey Anderson, Asst. U.S. Atty., Madison, Wis., for respondent.

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus. Petitioner, an inmate at the Federal Correctional Institution at Oxford, Wisconsin, claims that his confinement is being prolonged in violation of the Constitution and the laws of the United States. 28 U.S.C. § 2241. Petitioner claims that the good time credits he accumulated while in prison before his release on parole were confiscated without notice or a hearing in violation of due process.

From the documentary record produced by the parties, I find the following facts.

## FACTS

On June 11, 1980 petitioner was sentenced to a 15 year term of confinement on bank robbery charges in the District of Minnesota. Petitioner was credited with approximately 200 days of presentence confinement.[1] While serving his sentence, petitioner was credited with both statutory and extra good time, pursuant to 18 U.S.C. §§ 4161 and 4162 (1982).[2] Prior to the time that petitioner's accumulated good time credits mandated release "as if" on parole under 18 U.S.C. §§ 4163 and 4164 (1982), he was paroled by the United States Parole Commission on January 11, 1981. Upon his release, petitioner had 3,601 days remaining on his sentence.

On June 12, 1980, the United States Parole Commission issued a warrant for petitioner's arrest for violating the conditions of his parole. The warrant application was executed on January 20, 1984, at which time petitioner was placed in federal custody at the Federal Correctional Institution at Oxford, Wisconsin. The warrant application informed petitioner of the charges against him and stated that the commission could, after a revocation hearing, "revoke your parole or mandatory release, in which case the Commission will also decide when to consider you for further release."

In a Notice of Action dated July 20, 1982, the commission ordered that petitioner's parole be revoked, that none of the time petitioner spent on parole be credited, that the unexpired portion of his federal sentence commence upon his release from state custody, and that petitioner's confinement continue to the expiration of his sentence.

After a hearing on May 23, 1984, the commission issued a Notice of Action reaffirming its order that petitioner "[c]ontinue to expiration."

Petitioner presently is serving his violator term of 3,601 days. The Bureau of Prisons has computed a mandatory release date of December 10, 1989, which does not

---

1. Petitioner's sentence computation record tabulates his presentence jail credit at 202 days. In his petition, petitioner states that he was credited with 217 days of presentence confinement.

2. The documents submitted by respondent contain no record of the good time credits petitioner accumulated. Petitioner alleges that he had accumulated approximately 620 days of statutory good time and 200 days of meritorious good time.

take into account the good time credit that petitioner earned before his release on parole.

## OPINION

Petitioner asserts that he was not advised that his signature on a parole release form would result in the loss of good time credits earned during his original term. He maintains that he did not waive his right to these credits by signing his parole release form, and that the confiscation of the credits without a forfeiture hearing violated due process.

Respondent argues that petitioner's good time credits expired upon his release on parole, leaving nothing to be forfeited. Respondent advanced the identical argument in the case of *Hill v. Brewer*, 653 F.Supp. 15 (W.D.Wis.1985). In an opinion in that case, I rejected respondent's view of what happens to good time as one that found no support in the law, in legislative history, or in the practice of the United States Parole Commission of the Bureau of Prisons. Finding no regulation or program statement that enacted respondent's interpretation of the statutes, I concluded that paroled prisoners retained their pre-release good time credits. As the current parole statutes are silent on the question whether parole revocation results in an automatic forfeiture of such credits, I consulted the previous statutes, and concluded that the end result of the statutory scheme was a power in the parole board to forfeit good time credits at its discretion; while forfeiture may have been mandatory under the former 18 U.S.C. § 4205, 18 U.S.C. § 4207 gave the board authority to restore the credits by requiring the revoked parolee "to serve all or any part of the remainder of the term for which he was sentenced." [2]

Respondent argues that *Hill* was wrongly decided and should not be followed in this case. As additional support for his argument that good time is "used up" upon

parole release, respondent cites parole regulations and Bureau of Prison program statements that were not discussed in the briefs in *Hill.*

First, respondent cites 28 C.F.R. § 2.40 (1974), a former parole regulation that was in effect prior to a major revision of parole regulations in 1974. That regulation provided that a prisoner whose parole had been revoked "may be required to serve all or any part of the remainder of the term for which he was sentenced less such good time as he may earn following his recommitment."

Next, respondent refers the court to a May 29, 1979 Bureau of Prisons program statement providing that

> The SGT [statutory good time] will be awarded at the same rate as the original sentence and awarded only for the amount of time remaining to be served between the date the warrant was executed and the full term date.

Bureau of Prisons Program Statement 5050.9 CN–1 § 5(h)(4) (May 29, 1979).

Viewed separately, these provisions add little to respondent's argument that good time credits are "used up" when a prisoner is released on parole. The "all or any part" language of 28 C.F.R. § 2.40 (1970) is identical to that of the former 18 U.S.C. § 4207, a statute I interpreted as giving the parole board discretion to restore the pre-parole good time credits of parole violators. While both provisions cited by respondent reflect a policy that a parole violator's term may be shortened only by good time earned following his recommitment, they do not explain whether pre-parole good time expires upon parole release or whether it is forfeited upon parole revocation.

Finally, respondent points to an explanatory statement accompanying an interpretive regulation issued by the parole commission after the decision in *Hill.* Effective November 7, 1985, the parole commis-

---

**2.** In 1976 the parole statutes were rewritten, and the parole commission was created to replace the parole board.

sion amended its regulations to codify its interpretation of the interaction between the prison good time statutes, 18 U.S.C. § 4161 *et seq.*, and the parole statutes, 18 U.S.C. § 4201 *et seq.* The commission's interpretive regulation reflects the commission's position that pre-parole good time expires upon a prisoner's release. The regulation states

It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision.... Once an offender is conditionally released from imprisonment either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole mandatory release.

28 C.F.R. § 2.35(b), as amended, 50 Fed. Reg. 46,282 (November 7, 1985).

The explanatory statement accompanying these regulations states that

[t]his amendment does not amount to a new interpretation by the Parole Commission. Rather, it formalizes the longstanding interpretation of the parole and good time laws by the Commission and its predecessor the U.S. Board of Parole. The practice of the federal paroling authorities and the Bureau of Prisons for many years has been to treat previously earned good time as being "used up" once a prisoner is placed on supervision by parole or mandatory release.

50 Fed.Reg. 46,282 (October 17, 1985).

In *Hill,* I questioned respondent's argument that good time was "used up" upon release, observing that the government frequently took the position that pre-release good time credits could be forfeited as a consequence of parole revocation. *Hill v. Brewer,* slip op. at 5–6. The commission's explanatory statement addresses this apparent inconsistency, explaining that while courts have occasionally characterized the loss of such credits as "forfeiture," it has not been the commission's practice to make specific orders on the forfeiture of pre-parole good time. Under the commission's interpretation of the statutes under which it operates, the decision to forfeit previously earned good time credits at a parole revocation hearing "is not provided for as one of the decisions the Commission is statutorily obliged or authorized to make." 50 Fed.Reg. 46,283.

In the commission's view, the former parole statutes did not give the parole board authority to restore the pre-release good time credits of parole violators. Instead, the "all or any part" language of the former 18 U.S.C. § 4207 was intended to authorize the parole board to re-parole the offender during his violator term.

■ "Although not determinative, the construction of a statute by those charged with its administration is entitled to great deference, particularly when that interpretation has been followed consistently over a long period of time." *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982). When Congress has spoken precisely on a particular question, the courts must give effect to that clearly expressed congressional intent. However, when a statutory scheme is silent or ambiguous about a specific issue, the court must ask whether the agency's position is based on a "permissible construction" of the statute. *Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

■ In the statement accompanying its new interpretive regulation, the parole commission states that it and its predecessor, the parole board, have consistently treated pre-parole good time credits as "used up" once a prisoner is placed on supervision by parole or mandatory release. As previously noted, the good time and parole statutes do not state clearly that good time credits expire upon parole release. Moreover, the statutes are susceptible to conflicting interpretations about

the effect and duration of pre-parole good time credit. Consequently, it is not this court's role to interpret the statute as it thinks best, but rather to uphold the commission's interpretation of the statutory scheme, even if other reasonable interpretations exist or if a different construction appears wiser. *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981).

■ In light of the statement accompanying the parole commission's new interpretive regulation, I am unable to conclude that the commission's interpretation of the good time and parole statutes is an unreasonable one. The complex history of the parole and good time statutes and the absence of explicit language in current laws about the effect of parole release on good time make this issue a close question. Taking into consideration the commission's statement that it has not been its practice to order forfeiture of good time upon parole revocation, I conclude that the interpretation of good time as "used up" upon parole release is reasonable.

■ Under the commission's interpretation of the parole and good time statutes, petitioner's due process arguments must fail. Once it is determined that the sole function of good time is to determine the date of a prisoner's conditional release it cannot be said that a paroled prisoner has a vested right in pre-parole good time. Although petitioner may not have been informed that his signing a parole release form would nullify his accumulated good time credit, his parole officer's silence on this subject does not implicate due process.[3] Furthermore, when the statutes are construed as dictating that pre-parole good time credits expire upon release, it follows that the parole commission has no constitutional or statutory obligation to notify parolees that their good time will be unavailable to them if they are returned to prison to serve a parole violation term.

[3]. Parole Commission regulations provide that a prisoner who has been granted a parole date may refuse to sign the parole certificate. 28 C.F.R. § 2.40(h). An inmate who refuses his

## ORDER

IT IS ORDERED that the opinion entered in *Hill v. Brewer*, 85–C–826–C is REVERSED and that the current petition for a writ of habeas corpus is DISMISSED.

parole will be released pursuant to 18 U.S.C. §§ 4161–4164 on a date determined by his accrued good time credits.