647 A.2d 106

**Carl FROST**

v.

**STATE of Maryland.**

**Henry L. KING**

v.

**STATE of Maryland.**

Nos. 141, 143, Sept. Term, 1993.

Court of Appeals of Maryland.

Aug. 26, 1994.

Reconsideration Denied Oct. 5, 1994.

Margaret L. Lanier, Asst. Public Defender and Stephen E. Harris, Public Defender, both on brief, Baltimore, for appellants.

Richard B. Rosenblatt, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., George A. Eichhorn, III, and Alan D. Eason, Asst. Attys. Gen., all on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

The primary issue presented in these two consolidated appeals is whether Maryland Code (1957, 1993 Repl.Vol.), Article 41, § 4–612(e),[1] as applied to the appellants, violates the *ex post facto* clauses of the United States and Maryland constitutions. *See* U.S. Constitution, Article I, § 10, cl. 1; Maryland Declaration of Rights, Article 17. Section 4–612(e) provides as follows: "*Revocation—Rescission of diminution credits.*—The Parole Commissioner presiding may rescind all diminution credits previously earned on the sentence or any portion thereof in the revocation proceedings."

---

1. Section 4–612(e) has remained unchanged from the time it first appeared as part of the 1989 revision of Article 41, § 4–612. *See* Chapter 307 of the Acts of 1989.

## I.

Before discussing the facts, we believe it helpful to provide a brief overview of "diminution credits" and the related subject of "mandatory supervision." Diminution credits can be earned by inmates to reduce the lengths of their confinements. Presently, Md.Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.), Art. 27, § 700 specifies four types of diminution credits. Inmates can earn diminution credits based on good conduct, "satisfactory performance of work tasks," "satisfactory progress in vocational or other educational and training courses," and "satisfactory progress in special selected work projects, or other special programs." *Id.* § 700(d)–(f) & (h). These four types of diminution credits shall hereinafter be referred to respectively as good conduct, industrial, educational, and special projects credits. Good conduct credits, unlike the others, are deducted *"in advance* from the inmate's term of confinement, subject to the inmate's future good conduct." *Id.* § 700(d)(1) (emphasis added). Assuming an inmate does not forfeit diminution credits as the result of a disciplinary hearing, *see id.* § 700(g), the inmate can earn the right to be released on a date much sooner than that designated by his or her original term of confinement.

Upon accumulating sufficient credits to earn entitlement to release, the inmate is deemed released under "[m]andatory supervision." Mandatory supervision is defined by statute as "a conditional release from imprisonment which is granted to any person ... who has served the term or terms, less the deductions provided for in Article 27, §§ 700 and 704A of the Code [diminution credits]. This conditional release was previously referred to as 'mandatory release.'" Md.Code (1957, 1993 Repl.Vol.), Art. 41, § 4–501(13).[2] With this background

---

**2.** Although the legislature abandoned the phrase "mandatory release" in favor of "mandatory supervision," Ch. 307 of the Acts of 1989, the Code of Maryland Regulations continues to utilize the phrase "mandatory release." *See* Code of Maryland Regulations (COMAR) 12.08.01.-13.

in mind, we now turn to the facts pertaining to each appellant respectively.

## A. *Facts Regarding Appellant Frost*

On August 30, 1983, Carl Frost began serving a sentence of ten years for second degree rape with all but seven years suspended and five years probation upon release. While serving this sentence, Frost earned diminution credits which reduced the length of his confinement. By applying 679 days worth of diminution credits to his sentence, Frost was mandatorily released from prison on October 20, 1988, nearly two years before his maximum sentence expiration date of August 30, 1990.

Approximately one year after his mandatory release, Frost was arrested for a third degree sex offense, child pornography, and child abuse. Pursuant to a plea bargain, Frost pled guilty to child abuse and child pornography, and on December 26, 1989, he received 18–months' imprisonment. These new charges also resulted in the issuance of a warrant to revoke Frost's mandatory release. At a January 1990 hearing, the Parole Commissioner decided to revoke Frost's mandatory release, but the Commissioner credited him with six-months' "street time." *See* Md.Code (1957, 1986 Repl.Vol.), Art. 41, § 4–511(d) (providing that it is within the Parole Commissioner's discretion to grant "credit for time between release on parole and revocation of parole"); Md.Code (1957, 1986 Repl. Vol., 1989 Cum.Supp.), Art. 41, § 4–612(c) ("A person under mandatory supervision shall be subject to all laws, rules, regulations, and conditions applicable to parolees."). This decision was reduced to writing: "Revoke and Allow Six Months Street Time." [3]

---

**3.** Although Frost also argues that his diminution credits were rescinded without the benefit of due process, he is clearly mistaken. Frost contends that he "did not have a hearing at which he could present reasons why his diminution credits should not be revoked [and] [h]e never received a written decision indicating why they had been revoked, or even notifying him of the revocation." The record, however, reflects that at the January 10, 1990 revocation hearing Frost was

On March 6, 1990, Frost's probation stemming from his rape conviction was revoked, and the circuit court judge ordered that Frost serve the three-year suspended portion of the sentence in the rape case. The judge further ordered that it be served consecutively to all sentences Frost was presently serving, which included the 18–months' imprisonment for child abuse and child pornography.

In April of 1993, Frost filed a *pro se* petition for a writ of habeas corpus in the Circuit Court for Baltimore City. Frost's primary contention in his petition was that the Parole Commissioner lacked the authority to rescind diminution credits at the January 1990 hearing because to do so would violate the *ex post facto* prohibition. At the time of the revocation hearing, the Parole Commissioner had express statutory authority to "rescind all diminution credits previously earned on the sentence or any portion thereof...." Md.Code (1957, 1986 Repl.Vol., 1989 Cum.Supp.), Art. 41, § 4–612(e). This provision was part of a revision to § 4–612, which took effect on July 1, 1989. *See* Ch. 307 of the Acts of 1989. Section 4–612's predecessor, however, provided as follows:

"Any person sentenced after July 1, 1970, to the jurisdiction of the Department of Correction and having served his term or terms, less the deductions provided for in Article 27, § 700 of this Code, shall, upon release, *be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced.* Said released prisoner shall be subject to all laws, rules, regulations and

---

represented by counsel and given an opportunity to "explain the circumstances of the offense" that led to the revocation hearing and the rescission of his diminution credits. Frost also received a written decision indicating that his mandatory release was revoked, and therefore his diminution credits were necessarily rescinded, and that he was granted only six months' "street time." The decision further explained that the revocation was based on the child pornography and child abuse offenses and his failure to notify his parole agent of his arrest. Moreover, Frost signed a "Mandatory Release Certificate" prior to his mandatory release, in which he acknowledged his understanding that "revocation of my mandatory release will result in the forfeiture of all of the diminution of confinement credits I had earned as of the date of my mandatory release."

conditions applicable to parolees and shall remain under the supervision of the State Department of Parole and Probation until the expiration of the maximum term or terms for which he was sentenced." (Emphasis added).

Ch. 406 of the Acts of 1970.

Frost argued that the 1970 legislation was controlling, and that it did not permit the rescission of diminution credits. Therefore, Frost contended that the 1989 legislation disadvantaged him and could not be applied against him. The circuit court (Davis, Andre M., J.) denied Frost's petition and found no merit in his claim that the statutory authorization for revocation of a mandatory releasee's diminution credits had "*ex post facto* effect." Judge Davis reasoned that the 1989 legislation "worked no substantive change in respect [to] the Parole Commission's authority to rescind diminution credits" under the 1970 legislation.[4]

In denying Frost's petition for habeas corpus, Judge Davis also stated the following:

"[I]t is clear that the Parole Commission properly rescinded Frost's credits. It is difficult to imagine how the Parole Commission could have meaningfully acted at all but for a recision of those credits. The very nature of mandatory release supervision is such that the 'carrot' of release, on the basis of earned credits, will hopefully motivate an inmate to lawful behavior during the period between release and the maximum expiration date of the underlying sentences. The 'stick' of recision is a logical, and necessary, concomitant of that carrot."

Thereafter, Frost filed an application for leave to appeal to the Court of Special Appeals, which the intermediate appellate

---

4. In reaching this conclusion, Judge Davis noted that both a state and federal trial judge reached similar conclusions in unreported opinions. *See White v. Galley,* No. N–92–2996 (D.Md. Feb. 22, 1993) (Northrop, J.); *Willis v. Galley,* No. 23 H.C. 16342 (Balt. City Ct. Oct. 29, 1981) (Watts, J.).

court treated as a notice of appeal.[5] We issued a writ of certiorari prior to argument in the Court of Special Appeals.

---

5. In a per curiam opinion dated August 18, 1993, the Court of Special Appeals stated the following: "Although the appeal filed in this case was referenced as an application for leave to appeal, and docketed as such in this Court, it is, in substance, a notice of appeal. We therefore order that the case be transferred to the direct appeal docket for briefing and argument." The intermediate appellate court based its conclusion on this Court's opinion in *Gluckstern v. Sutton*, 319 Md. 634, 574 A.2d 898, *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990).

   Writing for the Court in *Gluckstern*, Judge Eldridge discussed the various statutory provisions that authorize appeals to the Court of Special Appeals in habeas corpus cases. *See* Maryland Code (1957, 1986 Repl.Vol.), Article 41, § 2–210 (authorizing an appeal under certain conditions from the denial of a habeas corpus application in an extradition case); Md.Code (1974, 1989 Repl.Vol.), Cts. & Jud.Proc. Art., § 3–706 (providing an automatic appeal where a person is released or discharged under a writ of habeas corpus "on the ground that the law under which the person was convicted is unconstitutional . . ."); *id.* § 3–707 (allowing an application for leave to appeal from the denial of relief in habeas corpus cases regarding the right to bail or allegedly excessive bail). The discussion in *Gluckstern* focused on Md.Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Art. 27, § 645A(e), which provided as follows:

   "No appeals to the Court of Appeals or the Court of Special Appeals in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment shall be permitted or entertained, except appeals in such cases pending in the Court of Appeals on June 1, 1958, shall be processed in due course. *Provided, however, that nothing in this subtitle shall operate to bar an appeal to the Court of Special Appeals* (1) in a habeas corpus proceeding instituted under § 2–210 of Article 41 of this Code or *(2) in any other proceeding in which a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefor,* including confinement as a result of a proceeding under Article 31B of this Code." (Emphasis added).

   *See also* Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 645A(e). *Gluckstern* construed clause (2) of this statute as "granting a right of appeal in a habeas corpus case not involving a challenge to the criminal conviction and sentence or the Art. 31B proceeding which led to the prisoner's confinement." 319 Md. at 662, 574 A.2d at 911. Because the appellants are not challenging their underlying convictions or sentences, but rather, are challenging the Parole Commissioner's authority

## B. *Facts Regarding Appellant King*

Henry King was sentenced to 25–years' imprisonment for a second degree murder which occurred on September 20, 1972. During his incarceration, King earned various diminution credits consisting of good conduct, industrial, and special projects credits. After application of these credits (2572 days) to his maximum term of incarceration, King was mandatorily released from prison more than seven years before his original term of confinement was set to expire.

King also violated the terms of his release. Less than two years after his release, King was convicted of malicious destruction of property and fleeing and eluding a police officer. In light of these new offenses, the Parole Commission issued a retake warrant for violation of King's release. On July 24, 1992, the Parole Commission revoked King's mandatory release, but granted him credit for one year of street time.

On April 23, 1993, King filed a petition for a writ of habeas corpus in the Circuit Court for Dorchester County (Johnson, J.) in which he raised the same contention as Frost. King argued that the 1970 legislation did not permit rescission of diminution credits, and therefore the 1989 legislation permitting rescission of "all" diminution credits could not be applied to his sentence without violating the *ex post facto* clause. *Compare* Ch. 406 of the Acts of 1970 (providing that an inmate on mandatory release is "deemed as if released on parole") *with* Ch. 307 of the Acts of 1989 (allowing the Parole Commissioner to "rescind all diminution credits previously earned on the sentence or any portion thereof . . ."). The circuit court denied King's petition based on reasoning very similar to that used by Judge Davis in denying Frost's petition. Judge Johnson explained that if the 1970 legislation were interpreted to mean that diminution credits were not rescindable,

"no revokee could have ever been reincarcerated to serve the remainder of his original sentence, for the reapplication

---

to rescind their diminution credits, the appeals are authorized by Article 27, § 645A(e).

of his diminution credits would erase the balance of his original sentence. This would essentially mean that the ability to hold the reimposition of the remainder of a [mandatory] parolee's sentence over his head, as a method of deterring the [mandatory] parolee from engaging in future criminal acts, would not exist."

Unwilling to reach "such an absurd result," Judge Johnson concluded that under the 1970 legislation all diminution credits were automatically rescinded upon revocation of mandatory release. Because the 1989 legislation made rescission of diminution credits discretionary, Judge Johnson declared that it was not more onerous than the prior legislation and denied King's petition for a writ of habeas corpus. Thereafter, King sought relief in the Court of Special Appeals, and prior to argument in that court, we issued a writ of certiorari and directed that the case be argued along with the *Frost* case.

## II.

Initially, the State contends that we should affirm the denial of appellants' habeas corpus petitions on the grounds that neither Frost nor King appealed their revocation proceedings to the circuit court. Section 4–511(e) of Article 41 states that "[t]he inmate may appeal to the circuit court within 30 days after receiving the written decision of the Commission. The court shall hear the appeal on the record." Md.Code (1957, 1993 Repl.Vol.), Art. 41, § 4–511(e). Based on this statute, the State contends that appellants' petitions should have been denied on this ground alone, without consideration of the merits. In support of its contention, the State cites *Shields v. Warden,* 218 Md. 634, 145 A.2d 279 (1958), and *Beard v. Warden,* 211 Md. 658, 128 A.2d 426 (1957).

In *Shields,* we rejected the petitioner's application for leave to appeal from a denial of a writ of habeas corpus which alleged that there was insufficient evidence to justify his conviction. This Court stated that "[i]t is well settled that *habeas corpus* proceedings are not intended to be, and cannot be used as, a substitute for a motion for a new trial or an appeal, and that the sufficiency of the evidence cannot be

raised by a *habeas corpus* proceeding." 218 Md. at 635, 145 A.2d at 279. *See also Canter v. Warden*, 207 Md. 616, 617, 113 A.2d 418, 419 (1955) ("We must repeat the rule that *habeas corpus* cannot be made to serve the purpose of an appeal or a new trial to review the question of the guilt or innocence of the petitioner."); *State ex rel. Battee v. Warden*, 191 Md. 751, 752, 60 A.2d 187, 187 (1948) ("As we have said many times, the writ of habeas corpus cannot be used as an appeal or for the purpose of reviewing the evidence given in a criminal case.").

In *Beard*, this Court also denied an application for leave to appeal from the denial of a writ of habeas corpus. The petitioner argued that the law under which he was sentenced was an unconstitutional *ex post facto* law. We explained that "the judgment of a court of general jurisdiction, which has the power to decide constitutional questions and questions of its own jurisdiction, is not a nullity, and that *habeas corpus* is not an available remedy when the judgment is not a nullity and direct appeal is or was available." 211 Md. at 660, 128 A.2d at 427. *See also Wilson v. Warden*, 198 Md. 663, 665, 80 A.2d 897, 898 (1951); *Loughran v. Warden*, 192 Md. 719, 723–24, 64 A.2d 712, 715, *cert. denied*, 337 U.S. 908, 69 S.Ct. 1040, 93 L.Ed. 1721 (1949).

The State's reliance on *Shields* and *Beard* is misplaced. In the instant case, appellants' primary contention is not that mere errors or irregularities were committed in their proceedings,[6] nor that a court of general jurisdiction made an incor-

---

**6.** We note that if the appellants sought habeas corpus relief based on mere errors or irregularities in their revocation hearings, without first raising such allegations in an Article 41, § 4–511(e) appeal to the circuit court, transcripts of the revocation hearing might be unavailable. *See* COMAR 12.08.01.22F(6) (providing that upon suit for judicial review a transcript shall be made available and that if a request for a transcript is not made within 60 days of the hearing, the recording of the revocation hearing may be destroyed). Thus, if prisoners were permitted to bypass § 4–511 appeals with respect to ordinary defects in their revocation proceedings, habeas courts might be faced with a plethora of contentions without any way of ascertaining whether the Parole Commission had the opportunity to address them. *See Reynolds v. Cunningham*, 131 N.H. 312, 556 A.2d 300 (1988) (holding that habeas corpus petition should have been dismissed where the petitioner

rect ruling as to its jurisdiction. *Cf. Superintendent v. Calman,* 203 Md. 414, 424, 101 A.2d 207, 212 (1953) (distinguishing between judgments of superior courts of general jurisdiction and justices of the peace). Rather, appellants maintain that the Parole Commissioner's order rescinding their credits was an absolute nullity because the Commissioner lacked the authority to take *any* action against them for violating the terms of their releases. Accordingly, if the Parole Commissioner lacked the power to rescind their diminution credits and thereby re-incarcerate them, appellants allege that they are being illegally detained. Based on the nature of this contention, we shall address the merits of appellants' *ex post facto* claims.

## III.

Both the United States Constitution and the Maryland Declaration of Rights prohibit the enactment of *ex post facto* laws. *See* U.S. Const., Art. I, § 10, cl. 1; Md.Decl. of Rts., Art. 17. "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981) (footnote omitted). In *Booth v. State,* 327 Md. 142, 608 A.2d 162, *cert. denied,* —— U.S. ——, 113 S.Ct. 500, 121 L.Ed.2d 437 (1992), this Court observed that "[t]he Maryland prohibition has been viewed as having the same meaning as the federal." 327 Md. at 169 n. 9, 608 A.2d at 175 n. 9 (citing *Anderson v. Dep't of Health & Mental Hyg.,*

---

delayed action approximately 16 months after parole revocation hearing and after transcript of proceeding had been routinely destroyed, thus leaving no indication of objection aside from unsupported after-the-fact allegations). Therefore, absent a claim such as appellants', *i.e.,* that the Parole Commissioner's order was an absolute nullity because the Commissioner lacked the authority to take any action, the State's argument—that it is improper to consider the merits of a habeas corpus petition where a § 4–511(e) appeal was bypassed—may well have merit.

310 Md. 217, 223, 528 A.2d 904, 907 (1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988)).

Appellants maintain that the amended version of Article 41, § 4–612, as applied in their cases, constitutes an *ex post facto* law. That legislation, enacted in 1989, entitles the Parole Commissioner presiding at a revocation hearing to "rescind all diminution credits previously earned on the sentence or any portion thereof...." Ch. 307 of the Acts of 1989. Section 4–612's predecessor, which originated in 1970, provided that a person "having served his term or terms, less the deductions [for diminution credits], shall, upon release, be deemed *as if released on parole* until the expiration of the maximum term or terms for which he was sentenced," and shall be "subject to all laws, rules, regulations and conditions applicable to parolees." Ch. 406 of the Acts of 1970 (emphasis added). Appellants contend that the 1970 legislation "did not authorize revocation of diminution credits." Therefore, appellants claim the 1989 statute is more onerous than its predecessor, and could not be applied to them. *See Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344, 357 (1977) ("It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law."). The State, however, maintains that it is "only logical ... that all credits were rescinded by operation of law" under the 1970 legislation, and thus the present statute has no negative impact on appellants.

The appellants' *ex post facto* contention, therefore, may be resolved by ascertaining the intent of the Legislature when it enacted the prior statute's provision that an inmate was "deemed as if released on parole." Ch. 406 of the Acts of 1970. In analyzing a statute, we must always be cognizant of the fundamental principle that statutory construction is approached from a " 'commonsensical' " perspective. *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483, 486 (1992) (quoting *United States v. Universal Corp.,* 344 U.S. 218, 221, 73 S.Ct. 227, 229, 97 L.Ed. 260, 264 (1952)). Thus, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense. *See Holman v. Kelly Catering,* 334 Md.

480, 487, 639 A.2d 701, 705 (1994); *Comptroller v. Fairchild Industries*, 303 Md. 280, 288, 493 A.2d 341, 345 (1985); *State v. Intercontinental, Ltd.*, 302 Md. 132, 137, 486 A.2d 174, 176 (1985). Furthermore, we do not read statutory language "in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole." *Forbes v. Harleysville Mutual*, 322 Md. 689, 696–97, 589 A.2d 944, 948 (1991). In *Geico v. Insurance Comm'r*, 332 Md. 124, 630 A.2d 713 (1993), we explained that "[c]ontext may include related statutes, pertinent legislative history and 'other material that fairly bears on the fundamental issue of legislative purpose or goal....'" 332 Md. at 132, 630 A.2d at 717 (quoting *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 632–33 (1987)).

In accordance with these principles of statutory construction, the State suggests the following common-sense analysis of the 1970 legislation:

"As the statute was silent, only two possible resolutions existed for the disposition of credits—the inmate could be entitled to keep all credits, or the inmate could be subjected to the loss of all credits. Inasmuch as the inmate initially possessed sufficient diminution credits to obtain mandatory release, retention of the credits following the finding of a violation would require immediate release again. In other words, if the inmate retained the credits, he could not be treated 'as if released on parole' (as required by [Ch. 406 of the Acts of 1970]) as he *could not be re-incarcerated* upon a violation. *Compare* Article 41, Section 4–511(d) ("if the order of parole is revoked, the prisoner shall serve the remainder of the sentence originally imposed ..."). Thus, despite the silence in the statute, the only logical interpretation of the statute that would accomplish its purpose required a loss of diminution credits by operation of law."

We agree with the State's assertion that under the 1970 legislation rescission of diminution credits was the only logical result in the event the Parole Commissioner deemed it necessary to revoke an inmate's order of mandatory release.

The 1970 legislation provided that once an inmate has served his term of confinement, less any diminution credits, the inmate is (1) deemed "released as if on parole"; (2) "subject to all laws, rules, regulations and conditions applicable to parolees"; and (3) "under the supervision of the State Department of Parole and Probation until the expiration of the maximum term or terms for which he was sentenced." Ch. 406 of the Acts of 1970. If we construed this legislation such that a mandatory releasee is entitled to keep all diminution credits notwithstanding a violation of the terms of the release, we would reach an entirely unreasonable result. *See D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179–80 (1990) ("[U]nreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." (internal quotation marks and attribution omitted)). Individuals on mandatory release would lack the motivation for complying with the terms of their releases if retention of diminution credits would preclude re-incarceration for violations of those terms. Thus, absent any "enforcement leverage" to support the conditions of release, those conditions would be illusory and the release essentially unconditional. *See Morrissey v. Brewer,* 408 U.S. 471, 478–79, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484, 493 (1972) ("The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules."). The 1970 legislation, however, specified that mandatory releasees are to be treated "as if released on parole," and parole is a conditional, supervised release. Furthermore, parolees who violate the conditions of their releases are subject to re-incarceration. *See Patuxent v. Hancock,* 329 Md. 556, 574, 620 A.2d 917, 926, *cert. denied,* —— U.S. ——, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993) (noting the basic nature of parole is that it enables "criminal offenders to serve at least part of their sentences in the community rather than in prison and *requires the offenders to adhere to prescribed conditions in order to retain their conditional freedom* " (emphasis add-

ed) (citing Neil P. Cohen & James J. Gobert, *The Law of Probation and Parole*, § 1.01, at 4–5 (1983)); Md.Code (1957, 1993 Repl.Vol.), Art. 41, § 4–501(5) (defining parole as a "conditional release from imprisonment" and explaining that a parolee is entitled to serve the remainder of the term of confinement outside of prison "if [the parolee] shall satisfactorily comply with all the terms and conditions in the parole order"). Thus, the State correctly observes that it would be impossible to treat mandatory releasees "as if released on parole" if they *could not be reincarcerated* upon a violation. Ch. 406 of the Acts of 1970. Subjecting mandatory releasees to all of the "laws, rules, regulations, and conditions applicable to parolees," and allocating funds and resources to supervise them simply would make no sense if there was no incentive for releasees to abide by the terms of their releases. Md.Code (1957, 1993 Repl.Vol.), Art. 41, § 4–612(c).[7]

---

**7.** Both parties point to legislative materials discussing the 1989 version of Article 41, § 4–612 in support of their opposing interpretations of the 1970 legislation. Taken as a whole, these materials are in accord with our conclusion that the 1989 legislation expressed what was clearly inferred from the 1970 legislation; namely, that in order for mandatory release to be effective, diminution credits are rescindable. *See Guardian Life Ins. v. Ins. Comm'r*, 293 Md. 629, 643, 446 A.2d 1140, 1148 (1982) ("That which necessarily is implicit in a statute is as much a part of it as that which is expressed."). These legislative materials make it clear that the 1989 legislation was intended merely to *clarify* any arguable ambiguity in the 1970 legislation, but did not substantively change the law to the appellants' disadvantage.

Appellants further maintain that, even if the 1989 legislation merely clarified the 1970 legislation without substantive change, their diminution credits still could not be rescinded because the 1970 legislation "should have always been interpreted in favor of leniency." In support of this contention, appellants point to the proposition that generally penal statutes are narrowly construed. *See In re Wallace W.*, 333 Md. 186, 191, 634 A.2d 53, 56 (1993); *Belman v. State*, 322 Md. 207, 213, 586 A.2d 1281, 1284 (1991). Appellants, however, ignore that "[t]he canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose." *United States v. Brown*, 333 U.S. 18, 25, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948). *See also Richmond v. State*, 326 Md. 257, 269, 604 A.2d 483, 489 (1992) ("When legislative intent can be gathered ..., that intent will be enforced, and the concept of lenity does not become an operable factor.").

We note that a federal statute appears to be the basis for Ch. 406 of the Acts of 1970. Prior to its repeal, 18 U.S.C. § 4164 (1985) (repealed effective Nov. 1, 1986) provided, in pertinent part, as follows:

"A prisoner having served his term or terms less good-time deductions *shall, upon release, be deemed as if released on parole* until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days." (Emphasis added).

Under this statute, the release was conditional, and good-time credits could be forfeited if a releasee violated the conditions of release. *See, e.g., Lambert v. Warden, U.S. Penitentiary,* 591 F.2d 4, 8 (5th Cir.1979); *Williams v. Ciccone,* 415 F.2d 331, 332–33 (8th Cir.1969); *Birch v. Anderson,* 358 F.2d 520, 523–24 (D.C.Cir.1965).

Finally, Appellants' contention that the mandatory release statute in no way affects their entitlement to previously earned diminution credits is refuted by Ch. 406 of the Acts of 1970. In addition to enacting the mandatory release statute, Ch. 406 amended Article 27, § 700 by specifying that diminution of an inmate's incarceration under that section is "subject to" Article 41's mandatory release statute. *See also* Md.Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.), Art. 27, § 700(b) ("*Subject to the provisions of § 4–612 of Article 41 of this Code,* each inmate committed to the custody of the Commissioner of Correction is entitled to a diminution of the inmate's term of confinement in accordance with the provisions of this section." (emphasis added)). Clearly, Ch. 406 was intended to *affect* an inmate's diminution credits when the legislation granting such credits was made "subject to" the mandatory release statute. As previously explained, we believe that the only logical effect of that statute on a mandatory releasee's diminution credits is rescission when the releasee violates the conditions of his or her release. Thus, Judge Davis and Judge Johnson were correct in ruling that the 1989 legislation did not constitute an *ex post facto* law as applied to appellants.

This observation concerning the relationship between Article 27, § 700 and Article 41, § 4–612 also leads us to reject an additional contention raised by appellants. Appellants maintain that even if the 1989 statute is consistent with the *ex post facto* clause, the Parole Commissioner lacked the authority to rescind anything other than good conduct credits upon a revocation of mandatory release. Appellants contend that unlike good conduct credits, "educational, industrial, and special projects [credits] remain intact. . . ." In support of this contention, appellants point out that the legislature has expressly prohibited the Division of Correction from revoking an inmate's industrial and educational credits. In this regard, Md.Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.), Art. 27, § 700(g) provides as follows:

> "For a violation of the applicable rules of discipline, the Division may revoke a portion or all of the [inmates's good conduct and special projects credits, but industrial and educational credits] *shall not be affected by the provisions of this subsection.*" (Emphasis added).

Appellants also stress the Division of Correction's regulations providing that industrial and educational credits "may not be revoked under any condition." *See* Code of Maryland Regulations (COMAR) 12.02.06.05E(3) & F(2) (implementing § 700). Consequently, according to appellants, our construction of Article 41, § 4–612(e), which provides that "[t]he Parole Commissioner . . . may rescind all diminution credits . . . in the revocation proceedings," should be limited by provisions in Article 27, § 700 which prescribe the *Division of Correction's* authority to revoke credits when an inmate violates an institution's applicable rules of discipline.

■ Appellants, however, failed to read the COMAR regulations in light of the statutory authority pursuant to which they were enacted. We reiterate that the legislature expressly specified that the provisions of Article 27, § 700 are subservient to Article 41's mandatory release statute. *See* Ch. 406 of the Acts of 1970 and Md.Code (1957, 1992 Repl.Vol., 1993 Cum.Supp.), Art. 27, § 700(b) (providing that the Division of Correction's authority to revoke certain diminution credits and

a prisoner's entitlement to earn them is subject to the Parole Commission's authority as delineated in Article 41, § 4–612, not vice versa). It would thus be unreasonable to conclude that the Division of Correction's limited authority to rescind only certain credits in disciplinary hearings is also a limitation on the Parole Commissioner's power to rescind "all" credits in revocation hearings. *See* Ch. 307 of the Acts of 1989 (evidencing, by strike-outs and additions, the House of Representatives' intention to make it absolutely clear that the Parole Commissioner, not the Commissioner of Correction, may rescind "all" diminution credits). Therefore, we believe the word "all" should be given its ordinary meaning, which encompasses good conduct, industrial, educational, and special projects credits without exception. *See Williams v. State,* 329 Md. 1, 15, 616 A.2d 1275, 1282 (1992) (stating that words are given their ordinary and popularly understood meaning absent manifest contrary legislative intent).[8]

---

**8.** Although King limited his petition for habeas corpus to challenging the Parole Commissioner's power to rescind diminution credits and thereby re-incarcerate him, Frost raises an additional contention which barely merits comment in this footnote. Frost contends that the 3 year suspended portion of his rape sentence was part of his original 10 year sentence, and that it cannot run consecutively to his 18 month intervening sentence for child abuse and child pornography. In essence, Frost submits that an individual who violates his or her probation ought not suffer the full severity of the suspended portion of the sentence. Although it is questionable whether Frost may raise this issue on habeas corpus, it is clearly lacking in merit in light of this Court's decision in *Kaylor v. State,* 285 Md. 66, 400 A.2d 419 (1979).

In *Kaylor,* the appellants were both sentenced to a total of three years imprisonment, however, their entire sentences were suspended in favor of probation. While on probation, the appellants were convicted and incarcerated for additional criminal offenses. Subsequently, their probation was revoked and the suspended sentences were ordered to be served *consecutively* to the sentences for the intervening offenses. In this Court, the appellants argued that "when probation is revoked the suspended sentence starts to run from the date of revocation and that only concurrent sentences are proper." *Kaylor,* 285 Md. at 68, 400 A.2d at 421. We rejected this argument and held that it was "within the trial court's discretion to decide whether the appellants' sentences should run concurrently or consecutively." *Kaylor,* 285 Md. at 75, 400 A.2d at 425. In reaching this conclusion, we explained that "the power of a judge to impose consecutive sentences ensures that a person who commits separate and distinct violations of the law receives separate

## IV.

As applied to appellants, Md.Code (1957, 1993 Repl.Vol.), Art. 41, § 4–612(e), which entitles the Parole Commissioner presiding at a revocation hearing to rescind "all" diminution credits, is not an invalid *ex post facto* law.

*JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND THE CIRCUIT COURT FOR DORCHESTER COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.*

---

and distinct punishments. Otherwise a person would escape the full impact of punishment for one offense." *Kaylor,* 285 Md. at 70, 400 A.2d at 422.

The Court of Special Appeals applied *Kaylor* in *DiPietrantonio v. State,* 61 Md.App. 528, 487 A.2d 676, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). In *DiPietrantonio,* the trial judge sentenced the appellant to 10 years' incarceration, but suspended the execution of 8½ years of that sentence in favor of 3 years probation. After completing the period of actual confinement, and while serving the probationary period, the appellant pled guilty to offenses for which he received 50 years' incarceration. Subsequently, the appellant was found in violation of probation, and he was sentenced to serve part of the earlier suspended sentence. Writing for the intermediate appellate court, Judge Moylan held that the judge who revoked the probation "had the unfettered prerogative to make that reinstated sentence of incarceration either concurrent with or consecutive to the 50–year term...." *DiPietrantonio,* 61 Md.App. at 535, 487 A.2d at 679.

The rationale of *Kaylor* and *DiPietrantonio* clearly governs the instant case. If the suspended portion of Frost's original sentence could not be reinstated consecutively to an intervening sentence, Frost would "escape the full impact" of his punishment.