843 A.2d 908

**Mark JONES**

v.

**W.O. FILBERT, Warden.**

**No. 0935, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

March 8, 2004.

Mark Jones, Pro Se, Appellant.

Scott S. Oakley (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for Appellee.

Panel: MURPHY, C.J., JAMES S. GETTY (Retired, Specially Assigned), and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

MARVIN H. SMITH, Judge, (Retired, Specially Assigned).

While on parole, appellant Mark Durand Jones, Jr. committed felony theft. After he was convicted and sentenced for that crime, the Maryland Parole Commission (MPC) revoked Jones' parole. Jones served his post-parole sentence in the Wicomico County Detention Center, then returned to the Division of Correction (DOC) to resume serving the remainder of his pre-parole sentences. He petitioned for a writ of *habeas corpus*, complaining that the DOC[1] refuses to credit diminution of confinement credits that he accrued before he was paroled against the remainder of his pre-parole sentences that he is now serving. Jones renews that argument in this appeal from the denial of *habeas* relief, and also complains that the judge who sentenced him heard his *habeas* petition, in violation of Md. Rule 15–307.

We agree with the Circuit Court for Wicomico County that, pursuant to Md.Code (1999), section 3–711 of the Correctional Services Article (CS), any diminution credits that Jones accrued before his parole cannot be used to reduce his term of confinement after parole was revoked. We also find that any consideration of Jones' *habeas* petition by a judge who had sentenced Jones did not prejudice Jones. Accordingly, we shall affirm the judgment.

## FACTS AND LEGAL PROCEEDINGS

In December 1998, Jones was convicted of resisting arrest, second degree assault, possession of cocaine, and theft of less

---

1. Warden W.O. Filbert, appellee, has been named solely in his official capacity. We recognize that Jones' dispute is with the DOC and its diminution credits policy.

than $300.  The Circuit Court for Wicomico County (Warren, J.) sentenced Jones to an aggregate of seven years of DOC confinement, beginning September 30, 1997.

On January 2, 2001, the MPC paroled Jones.  While he was on parole, Jones committed felony theft.  In January 2002, the Circuit Court for Wicomico County (Simpson, J.) sentenced Jones to two years for escape.  In September 2002, the same court (Beckstead, J.) sentenced Jones to five years on the theft conviction, concurrent with his outstanding sentences and beginning on December 12, 1998.  On November 12, 2002, the MPC revoked Jones' parole.

Jones apparently served his post-parole sentence in the Wicomico County Detention Center, then was returned to the DOC to resume serving his pre-parole sentences.  Over Jones' objection, the DOC refuses to credit Jones with the 1,120 diminution credits that he claims to have accrued before he was paroled.

## DISCUSSION

### I.

### Diminution Credits

"Diminution credits can be earned by inmates to reduce the lengths of their confinements."  *Frost v. State,* 336 Md. 125, 128, 647 A.2d 106, 107 (1994).  By accruing diminution credits, inmates may earn the right to be released to mandatory supervision on a date much earlier than that designated by his or her original term of confinement.[2]  *See id.,* 336 Md. at 128, 647 A.2d at 108.

---

2.  Although diminution credits cannot guarantee an inmate that he will be released on parole, diminution credits can guarantee mandatory release.  "Upon accumulating sufficient credits to earn entitlement to release, the inmate is deemed released under '[m]andatory supervision.'"  *Frost v. State,* 336 Md. 125, 128, 647 A.2d 106, 108 (1994).  Mandatory supervision is a conditional release from confinement granted to an inmate who "has served the term or terms, less diminution credit awarded[.]"  Md.Code (1999), § 7–501(3) of the Correctional Services Article (CS).

But an incarcerated inmate "is entitled to diminution of the inmate's term of confinement [only] as provided under [the diminution credits] subtitle" of the Correctional Services Article. *See* CS § 3–702. In CS section 3–702, the General Assembly directed that this right to accrue and use diminution credits is a qualified one that is "subject to" both section 3–711 in the parole subtitle and the provisions of the mandatory release subtitle.

In section 3–711, the General Assembly instructed that parolees forfeit diminution credits by committing crimes while on parole. Since it became effective in 1996, section 3–711 has governed how these parole crimes affect "past" diminution credits (*i.e.,* credits accrued before parole). It provides in full:

If an inmate is convicted and sentenced to imprisonment for a crime committed while on parole and the parole is revoked, diminution credits that were awarded before the inmate's release on parole may not be applied toward the inmate's term of confinement on return to the Division.

CS § 3–711.

This statute explains why the DOC has refused to credit Jones with any diminution credits that he accrued before he was paroled. Because Jones undisputedly was convicted and sentenced to imprisonment for a crime committed while on parole, his parole was revoked, and he was reincarcerated, CS section 3–711 prevents Jones from using any past diminution credits to reduce the term of his incarceration.

Although there is no reported Maryland case directly holding that section 3–711 prevents the use of pre-parole diminution credits after the MPC revokes an inmate's parole for committing a new crime, both the Court of Appeals and this Court have adopted that position in *dictum*. We agree with the view of section 3–711 reflected in both of these cases.

In *Sec'y Dep't of Pub. Safety & Corr. Servs. v. Henderson,* 351 Md. 438, 718 A.2d 1150 (1998), the Court of Appeals commented on the statutory prohibition against the use of pre-parole credits. Henderson committed a drug crime while on

parole. He was returned to the DOC to serve a new sentence and the remainder of his pre-parole sentence for a violent crime. *See id.,* 351 Md. at 446, 718 A.2d at 1154–55. The DOC credited him at the rate of five good conduct credits per month, which it applied against Henderson's single term of confinement.[3] After two decisions by the Court of Appeals regarding how the two accrual rates affected inmates serving terms of confinement consisting of sentences that earn credits at different rates, the DOC recalculated Henderson's credits. The DOC believed that the Court's decisions obligated it to treat each sentence within a term of confinement separately. *See id.,* 351 Md. at 446–48, 718 A.2d at 1154–55. Even though both of Henderson's sentences accrued credits at the lower rate, the DOC applied the credits separately against each one, and then calculated separate release dates for each sentence. *See id.,* 351 Md. at 447–48, 718 A.2d at 1155. One of those recalculated dates was more than four years after Henderson's actual release date. *See id.,* 351 Md. at 447, 718 A.2d at 1155. As a result, Henderson was rearrested and returned to DOC custody. *See id.,* 351 Md. at 447–48, 718 A.2d at 1155.

The Court of Appeals held that the DOC initially "calculated [Henderson's] good time credits exactly as it should have and properly released him." *Id.,* 351 Md. at 452, 718 A.2d at 1157. The Court affirmed that " 'all sentences that overlap or run consecutively do not need to aggregate *for all purposes* to a single term of confinement.' " *Id.* (quoting *Md. House of Corr. v. Fields,* 348 Md. 245, 267, 703 A.2d 167, 178 (1997))(emphasis in *Henderson* ). In contrast to previous cases, in which the aggregation of sentences that accrued credits at different rates would have "denied the inmates a legislatively mandated benefit[,]" the aggregation of Henderson's two sentences "would have the opposite effect"—it would ensure that

---

**3.** For sentences imposed after October 1, 1992, good conduct credits accrue at the rate of either five or ten per calendar month; generally, drug and violent crimes earn good conduct credits at the lower rate. *See* CS § 3–704(a)(recodifying former Article 27 section 700(d) "without substantive change").

Henderson received that benefit. *See id.*, 351 Md. at 452, 718 A.2d at 1157. The Court concluded that the DOC's "disaggregation" and recalculation of Henderson's release date was unwarranted because the statutory direction to apply diminution credits against the inmate's term of confinement was not ambiguous in Henderson's situation. *See id.*, 351 Md. at 453, 718 A.2d at 1158.

Judge Chasanow wrote a concurring and dissenting opinion, joined by Chief Judge Bell and Judge Rodowsky. The minority emphasized that the General Assembly had prohibited the use of pre-parole credits by inmates who commit crimes while on parole. *See id.*, 351 Md. at 457–58, 718 A.2d at 1160. Through former Article 27 section 700(k), now recodified as CS section 3–711, "the legislature made clear its disapproval of what the majority is doing by letting Henderson's pre-parole diminution credits reduce his post-parole sentence." *Id.*, 351 Md. at 457, 718 A.2d at 1160.

The *Henderson* majority replied to the minority's criticism in a footnote, denying that it was "overlook[ing] the effect" of this statutory prohibition against using pre-parole credits. *See id.*, 351 Md. at 452 n. 3, 718 A.2d at 1157 n. 3. The majority pointed out that it did not apply to Henderson because his sentences were imposed before the statute took effect in 1996. *See id.* Although the majority concluded that the statute "ha[d] no application to this case[,]" it nevertheless agreed with the minority that it does "apply to persons on parole who commit new crimes and receive new sentences on or after October 1, 1996[.]" *See id.*

This Court recently discussed section 3–711 in *Stouffer v. Staton*, 152 Md.App. 586, 833 A.2d 33 (2003). That case involved an inmate who committed a crime while on mandatory supervision. We examined the statutory scheme that was in effect when Staton's mandatory supervision was revoked, and contrasted it with the clear statutory language of section 3–711 and its predecessor, as well as the analogous language in current sections 7–502(c) and 7–504(c) of the mandatory supervision subtitle, which did not take effect until after

Staton's mandatory release was revoked. *See id.,* 152 Md. App. at 588–89, 591–95, 833 A.2d at 34. We held that Staton was entitled to the past good conduct credits that accrued at a higher rate before his mandatory release, because the prior statutory scheme that applied to him was ambiguous. *See id.,* 152 Md.App. at 605–09, 833 A.2d at 44–46.

In doing so, we contrasted the ambiguous statutory scheme governing the fate of Staton's past credits after his mandatory release was revoked with the clear language and legislative policy governing the fate of past credits after a parolee commits a new crime while on parole. As an example of the General Assembly's policy "that an inmate's misbehavior could prevent him from using [diminution] credits," we cited the section 3–711 provision "prevent[ing] inmates whose parole is revoked because they committed crimes while on parole from using any past credits." *Id.,* 152 Md.App. at 605, 833 A.2d at 44. We observed that, in contrast to the mandatory supervision subtitle that governed what happened to Staton's credits, "[s]ection 3–711 specifically addresses what happens to an inmate's past good conduct credits when he or she commits a new crime while on parole[.]" *Id.,* 152 Md.App. at 591, 833 A.2d at 36.

We adopt this *dicta* from *Henderson* and *Staton* as our holding in this case. Under CS section 3–711, inmates convicted and sentenced to confinement for crimes committed while on parole forfeit any diminution credits that they accrued before parole.

The General Assembly's decision to prohibit the use of past credits in these circumstances has a clear public policy objective. No inmate has the constitutional right to be paroled. *See Dennis v. Warden, Md. House of Corr.,* 12 Md. App. 512, 514, 280 A.2d 53, 55 (1971). Rather, an inmate may earn the right to be conditionally free on parole only by demonstrating his good behavior during incarceration and by promising that this good behavior will continue while he is released in the community. Parole is a "carrot and stick" tool designed, *inter alia,* to deter inmates from committing new

crimes. Thus, inmates who commit crimes while on parole break the very promises by which they became free. Naturally, these parolees must suffer the agreed upon consequences of that breach. Part of the explicit *quid pro quo* between parolees and the State is that parolees who use their freedom to commit other crimes will find themselves reincarcerated without any of the diminution credits they accrued before parole. That is what happened here.

We specifically reject Jones' contention that section 3–711 is ambiguous as to whether "the legislative intent was to stop the carrying over of credits from pre-parole to shorten [a] post-parole sentence," such that the rule of lenity requires that he maintain his past credits for use against the remainder of the pre-parole sentence that he is now serving.[4] The answer to that argument is that none of the credits Jones accrued before he was paroled can be used because Jones has been convicted and sentenced to additional incarceration for committing a crime on parole. The fact that Jones is currently serving the remainder of his pre-parole sentences, rather than his post-parole sentence, has no impact on this forfeiture.

Similarly, it does not matter where Jones has been serving his sentences. We reject Jones' contention that section 3–711 does not apply to him because he served his post-parole sentence in a county detention center rather than in the DOC. The statute explicitly applies to "inmate[s] convicted and **sentenced to imprisonment** for a crime committed while on parole[.]" CS § 3–711 (emphasis added). The term "imprisonment" is not defined in the Correctional Services Article.

---

**4.** Jones' reliance on *Md. House of Corr. v. Fields*, 348 Md. 245, 703 A.2d 167 (1997), and *Beshears v. Wickes*, 349 Md. 1, 706 A.2d 608 (1998), as authority for applying the rule of lenity to section 3–711, is misplaced. As we explained in *Staton*, those early diminution credits cases turned on statutory ambiguities regarding the accrual of good conduct credits for terms of confinement that included sentences imposed both before and after the General Assembly changed the accrual rate for certain crimes. *See Stouffer v. Staton*, 152 Md.App. 586, 596–602, 833 A.2d 33, 38–42 (2003). Given that Jones' term of confinement has never included sentences that accrue credits at different rates, the rule of lenity lessons from these cases do not apply here.

Given the commonly understood meaning of "imprisonment" as an inclusive term for any confinement that occurs as a result of a criminal conviction, and the lack of any restrictive language in section 3–711 (such as "imprisonment *in the Department of Corrections*"), we agree with the *habeas* court that incarceration in a correctional facility not operated by the DOC is "imprisonment" within the meaning of section 3–711. Section 3–711 applies to all inmates who are reincarcerated after the MPC revokes parole for committing new crimes on parole.

## II.

### *Habeas* Proceedings

Md. Rule 15–307 provides:

If the judge designated in the writ is unavailable when the individual confined or restrained is produced, the individual shall be taken before another judge of the same judicial circuit. **If the individual is confined or restrained as a result of a sentence for a criminal offense, ... the individual shall not be taken before a judge who sat at any proceeding as a result of which the individual was confined or restrained unless the individual consents in writing.** (Emphasis added.)

On February 21, 2003, Judge Donald C. Davis issued a show cause order regarding Jones' petition for *habeas* relief. The May 29, 2003 *habeas* hearing was held before Judge D. William Simpson, apparently because Judge Davis was "unavailable" when Jones was produced. Judge Simpson denied and dismissed Jones' *habeas* petition in a written order dated June 4.

Upon receiving that order, Jones protested, sending the court a letter arguing that Judge Simpson should not have heard or decided his *habeas* petition because Judge Simpson previously had sentenced Jones for another crime. Jones suggested that the June 4 order be "nullified" and that his petition be heard by the "judge [to] whom the writ was

assigned or a judge who[ ] has not set [sic] in on a prior criminal sentence related to *habeas corpus.*"

The DOC's Assistant Attorney General responded by letter, pointing out that the crime for which Judge Simpson sentenced Jones was "not among the cases as a result of which Jones is currently confined or restrained by the DOC." He suggested, *inter alia,* that the court " 'nullify' [its] order as requested by Jones and refer the case to Judge Davis, as seemingly suggested by Jones[.]" In addition, he asked "that Judge Davis summarily deny and dismiss the petition and this *habeas corpus* case without further hearing" because "the petition, the response, the reply, and documents filed therewith" showed that Jones "is not entitled to any relief." *See* Md. Rule 15–303(e)(3)(A)(*habeas* judge may deny petition without a hearing if pleadings, documents, and public records show petitioner "is not entitled to any relief").

By order dated June 23, Judge Simpson granted the agreed upon relief. The June 4 order and opinion was vacated and the petition was reassigned to Judge Davis. By order and opinion dated June 24, Judge Davis denied Jones' petition without further hearing. Judge Davis' opinion reviewed and rejected Jones' arguments, concluding that "there is no statutory ambiguity," that "the fact that the sentence for the new crime was served in Wicomico County, not DOC, does not prevent the loss of pre-parole diminution credits[,]" and that the rule of lenity rationale in *Henderson* was inapposite.

■ We find no prejudice from any violation of Rule 15–304 that might have occurred. As Jones requested, his petition was reassigned to Judge Davis. Judge Davis' conclusions of law were legally correct, as we have discussed above. His decision to deny the petition without further hearing was authorized by Md. Rule 15–303(e)(3)(A). Having raised no factual disputes, credibility issues, or legal uncertainties that required a hearing in this instance, Jones received all the consideration to which he was entitled.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**